PATRICK E. SULLIVAN vs. SIMPLEX ELECTRICAL COMPANY.

Suffolk.    November 13, 1900. — February 27, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

The danger to an employee in a rubber factory feeding rubber into a machine to be pressed between two revolving cylinders of having his hand caught between the rollers is an obvious one, and the employer need not instruct a boy of nineteen how to avoid it. An instruction to the boy, that if the scraps of rubber did not come down he should push them with his left hand, did not justify him in thinking that he could do this without running the risk of getting his hand caught.

TORT by a boy employed in a rubber factory to recover damages from his employer for injuries sustained while engaged in feeding rubber into a machine to be pressed between two revolving cylinders. Writ dated June 11, 1898.

The declaration contained four counts, the first three under the employers' liability act, and the fourth at common law. The common law count alleged a failure to warn the plaintiff of the dangers of the machine on which he was at work, and to instruct him as to the proper and safe manner in which the work intrusted to him should be done.

At the trial in the Superior Court, before *Sherman*, J., it appeared, that the plaintiff was injured on May 7, 1898. He testified that he was nineteen years old on June 12, 1897. One Montague, who was an operator in the defendant's factory, had charge of the machine by which the plaintiff was injured. The character and use of the machine are described in the opinion of the court. The plaintiff gave the following account of the happening of the accident:

" He [Montague] said, ' Have you got any of that scrap rubber left?' I said, ' Yes, sir.' He says, ' You go down stairs and feed it into the mill.' I said, ' I don't know how to do that; I never done it before.' He said, ' You go down stairs and you roll those scraps up in a roll, and you pick them up off the floor and you walk around the mill, between the bench and the mill, and put the scraps on there, and hold your right hand underneath the rolls to catch them when they come through, and

bring them up around on the rolls, and let them go around like that till I come down. I will be down soon and then I will show you what to do next on the machine.' Then he said, 'If those scraps don't come down through the rolls then, you push them down with your left hand.' I mean by the word 'rolls' cylinder or roller. I came down stairs, went over to this mill where he sent me and I did as he told me, rolled these scraps in a roll, took them up and walked around where he told me to go, in between this bench and the mill, and put the rubber on there, scrap rubber, and I held my right hand underneath the rolls for quite a little while, and they did n't seem to come through then, so I pushed them down with my left hand, and in pushing them down my hand went in with the rubber."

On cross-examination the plaintiff testified as follows: " I knew at that time that if the rubber did n't come down through the rolls at all there would be no occasion to have my hand there. I rolled the rubber up in a rough roll that was probably six inches thick. I put that roll between the revolving cylinders. I saw these revolving. I noticed that the roll of rubber did n't go down through. I knew that the rubber was going to go through when I pushed it. If I had n't pushed it, I knew that there was no rubber coming down between the cylinders, and I knew there was nothing there to get hold of with my right hand at that time. I knew that if the space between the two rolls had been larger than the rubber it would have dropped right down through, and I knew that the reason it did n't go down through was because the roll was bigger than the space between the two cylinders. I knew that the roll of rubber was a big roll. I pushed it so as to have it go through. I pushed it because Mr. Montague told me to push it. He told me to push it so as to have it go through. If I had n't pushed it I don't think it would have gone through. I knew that if the space between those two cylinders was one inch, that a roll of rubber which was two inches thick would have to be pushed to go down through. I knew that when the rubber once caught between the two cylinders it would go down itself. I knew that if my fingers were with the rubber they would go down with it. I knew that when I put the rubber between the cylinders and it went down through it would be somewhat squeezed. When I

put it on I realized that it did n't go through. I knew at that time that the cylinders were revolving, and I pushed the rubber for the sake of getting it caught between the two cylinders so that it would go down through, and I put my hand on it for that purpose. I pushed my hand down in the direction of the centre of the two cylinders or the middle of the two cylinders, as they were coming together. My hand was on top of the rubber. There was nothing to conceal any part of the cylinders in the way of a hood, or any other piece of machinery or anything of that kind. While I was stooping I was looking at my hand that was pushing the rubber in. My stooping did not in any way interfere with my seeing where my hand was. I could see I was pushing the rubber down through and in what direction I was pushing and the cylinders revolving. My hand was right over the rubber, on top of the rubber. I put the rubber in lengthwise. I put my hand right over the roll of rubber and pushed the rubber right down between the two revolving cylinders. I could see I was pushing the rubber down, and I was pushing it down for the purpose of having it catch between the cylinders and go down between. I was pushing the rubber through to bring it around the other roll. I knew that the roll of rubber would flatten when going through between the cylinders, and I knew that was by the pressure of the two cylinders together on the rubber as it went down through."

At the close of the evidence, the judge ruled, at the request of the defendant, that the action could not be maintained, and by his direction the jury returned a verdict for the defendant. At the request of the plaintiff, the judge reported the case for the consideration of this court.

If the ruling was wrong, the verdict was to be set aside and a new trial ordered; otherwise judgment was to be entered on the verdict.

*P. M. Keating*, for the plaintiff.

*C. S. Knowles*, for the defendant.

HAMMOND, J. The plaintiff was put to work at a machine where there were two iron or steel cylindrical rolls, each two feet in diameter and three feet long, set side by side in a horizontal position, parallel to each other, and revolving in opposite directions at different rates of speed. The bottom of each roll

was two feet above the floor and the top of each four feet above it. The machine was used to press out scrap rubber and work into the rubber certain other substances. The distance between the rolls when in operation varies from one eighth to three quarters of an inch. The rubber is put between and on top of the rolls while they are in motion, and as it comes out below them is caught by the operator, who lays it on and around one of the rolls, where it is allowed to revolve while other substances are added to complete the composition. The operation lasts at least several minutes. If the rubber when put on the rolls does not go down by itself the operator pushes it down with his hands. As a general rule it is pushed with the tips of the fingers of both hands.

In the early afternoon of the day of the accident, the plaintiff, who had never worked at such a machine before, was told by one Montague to go down stairs and feed scrap rubber into this machine. The plaintiff replied saying he had never done that and did not know how to do it. Thereupon Montague instructed him how to roll up the scraps of rubber and put them on the rolls, and then said : " Hold your right hand underneath the rolls to catch them when they come through, and bring them up around on the rolls and let them go around like that till I come down. I will be down soon and then I will show you what to do next on the machine." He then added : " If those scraps don't come down through the rolls then, you push them down with your left hand."

Under these circumstances the plaintiff went down stairs, rolled up the scrap rubber, placed it upon the rolls as directed, and held his right hand under the rolls " for quite a little while " ; as the rubber did not seem to come through, he pushed it down with his left hand, and while in that act his hand was caught between the rolls and crushed.

There was no trouble with the rolls, and the accident is not attributable to any defect in their nature or operation. There was a pan upon the floor for the reception of the compound which fell between. the rolls during the mixing of the rubber. This pan projected beyond the rolls about a foot toward the front, and prevented the plaintiff from seeing exactly how far apart the rolls were, but he could see that they were very near

together. He had seen Montague work at the machine, had seen him put material between these two rolls on at least three different occasions, had seen that the rubber had been " squeezed together " by going between them, and he expected that such would be the result. He knew that if the rubber once caught between the rolls it would go down, and that if his fingers were there with the rubber they would go with it. In short, he knew that he was at work upon revolving rolls which could not be far apart, although he could not see down to the place where the revolving surfaces came nearest to each other; and he knew that if the rolls were close enough together there was danger of getting his hand pinched. He had been at work several weeks in the factory, and near revolving wheels and rolls, although not at any machine, except that for two weeks prior to the accident he had been assisting Montague upon a machine called a calender. This machine had three rolls of hard material like iron or steel, of about the same size as those at which the accident occurred, placed one above the other. The plaintiff's duty there was to sit down and keep the material, which was very thin and about two feet wide, coming through these revolving rolls from creasing as it came off the rolls.

The danger of having one's hand injured if caught between revolving rolls is an obvious danger, and the mere fact that the operator cannot tell the exact degree of the danger if the nature and character of it can be easily seen is not enough to require warning and instruction to a boy of the age of the plaintiff and of ordinary intelligence; and the case must stand in the same class with *Stuart* v. *West End Street Railway*, 163 Mass. 391, *Lowcock* v. *Franklin Paper Co.* 169 Mass. 313, and similar cases.

Nor is the case changed by the fact that the plaintiff was told if the rubber did not go down itself he should press it down with his fingers. The fair interpretation of the instruction was that he might use his fingers for the purpose of pressing down the rubber, but we do not think he was justified in thinking that he was safe in doing that without regard to the peril incidental to such an operation, or that he was thereby relieved from the duty of seeing to it that his hand did not go too far down.

*Judgment on the verdict.*