EMMA MORANCY, *pro ami, vs.* W. & J. HENNESSEY.

PROVIDENCE—MAY 26, 1902.

PRESENT: Stiness, C. J., Tillinghast and Rogers, JJ.

(1) *Master and Servant.  Negligence.  Assumed Risks.  Emergencies.*

Plaintiff, a girl seventeen years of age, had worked on a mangle in a laundry for about four months; she had been instructed how to run the mangle by another employee, and had been warned by the "boss" of the machine to be careful.  Plaintiff testified that she understood that she was to be careful and not get her hand in the rollers.  Plaintiff's duty was to feed sheets to the machine, and if the sheets stuck to push them so that the cylinders would the better draw them.  On the day in question a sheet stuck in passing over a roughness on the table of the machine, and in pushing the sheet it gave way and plaintiff's hand was drawn between the rollers :—

*Held,* that the facts did not disclose an emergency in the sheet's moving or giving way, as that the sheet should move was precisely the result plaintiff was trying to produce.

*Held,* further, that, as plaintiff knew of the danger and how to avoid it, she must be held to have taken the chances of injury from an obvious danger.

TRESPASS ON THE CASE for negligence.  Heard on petition of plaintiff for new trial, and petition denied.

ROGERS, J.  This is the plaintiff's petition for a new trial

in an action on the case for negligence after a nonsuit in the Common Pleas Division.

On January 22, 1900, the plaintiff, a girl seventeen years old lacking one month and three days, was injured by having her right hand drawn between the rollers, or cylinders, of a mangle she was tending while working for the defendants in their steam laundry.

According to the plaintiff's testimony she went to work for the defendants the first part of August, 1899, to fold and shake out clothes, there being a place vacant there for doing that work.   For five or six weeks she worked exclusively at folding and shaking out clothes, which was done in the same room with the mangle and not far from it, the clothes being folded and shaken out for the purpose of putting them on the mangle.   After working at shaking out clothes for five or six weeks the plaintiff was put to work tending the mangle by the " boss " of that machine, not without objection but upon being told by the " boss," one Katie Griffin, that if the plaintiff would not work on the machine she would tell Mr. Hennessey, the plaintiff consented without further objection to work upon it, and from the middle or latter part of September, 1899, until January 22, 1900, when she got hurt, she had worked on the machine the greater part of the time, being about four months.   Though the plaintiff had never worked in a laundry before she was employed by the defendants she swore she knew how to run the mangle at the time of the accident and that Mamie Walsh a girl who worked on it, had shown her.   In cross-examination she swore in answer to interrogatories as follows :   " Q. 113.  Who was the person that told you to go to work on the machine ?   A.  Katie Griffin. Q. 114.  Did she have charge of the machine ?   A.  Yes sir. Q. 115.  She gave you some instructions about not getting your hand in ?   A.  All she said when I went on the machine was to be careful or my hand would be hurt.   Q. 116.  And you understood you were to be careful and not get your hand into the rollers ?   A.  Yes sir."   This warning by Katie Griffin was in addition to the plaintiff's being shown by Mamie Walsh.   That the plaintiff's objection to Katie Griffin about

working on the machine, if not merely formal, was, at least, of very short continuance, is apparent, for the plaintiff swore in answer to "Q. 99. Did you ask for additional pay? A. Yes. I went and asked Mr. Hennessey for more pay and he asked me for what and I told him I was working on the machine and he said he wouldn't give me more pay because he didn't put me on there." Her continuing to work on that machine, therefore, after that interview would seem to have been an act of her own volition.

The mangle was a machine for drying and ironing clothes and consisted of a hot cylinder and a roller both revolving, between which the clothes were passed while damp and were thus dried and ironed. The plaintiff and another girl were tending or feeding the mangle on one side of the rolls while two other girls were tending it on the other side. The tending or feeding the machine referred to consisted in placing sheets, which they were then engaged at, upon a table or board connected with the machine, lapping the sheets upon a piece of canvass so as to draw them between the rolls or cylinders. If the sheets stuck the tenders were to push them so that the cylinders would the better draw them. The plaintiff swore that the table was rough and the corner of a damp sheet turned up and caught, and, as she was pushing it to go through, the sheet gave way and her hand slipped and was drawn between the rolls and burnt and crushed. She swore she had never complained that the table was rough. The plaintiff likewise swore that there was a guard on the machine, which it was contended was not sufficient to protect her hand from going into the hot cylinder. The cylinders were revolving in plain sight and the plaintiff was feeding in one side or edge of the sheet and the girl working by her side was feeding in the other side of the sheet.

The testimony for the plaintiff consisted of her own testimony describing the accident, and that of a medical man as to the extent of the plaintiff's injuries. At the conclusion thereof the plaintiff was nonsuited, and the question is, was the nonsuit properly granted?

The plaintiff declares in substance in the various counts of

her declaration that the defendants were guilty of negligence in this, that being of the age of, to wit, seventeen years and of less intelligence than the average intelligence of girls of her age, of which the defendants had knowledge, or, from her appearance and other facts within the defendants' knowledge, ought to have had knowledge, she was set to work on a dangerous machine, to wit, a mangle, in the use of which she was inexperienced, and the perils and dangers of which she did not know and failed to appreciate, but which the defendants knew and neglected to give her proper instructions how to properly perform her duties in such employment, and to give her proper and sufficient warning and notice of the perils and dangers of working at said machine, and to guard said machine or protect the plaintiff against it, and allowed said machine to become defective and remain in a defective condition, in some manner of which she, the said plaintiff, had no knowledge, but which was known to the defendants, or might have been known to them by the exercise of due care and diligence.

Great stress was laid in the declaration that the plaintiff was below the average intelligence for her years, which statement was reiterated by her counsel in his argument in this court, but no witness was called and no question was asked tending to show the truth of such statement. Neither her father and next friend, nor any of her relatives, nor the girls that had been daily working with her for months were called on to testify on that point, nor, in the opinion of the court, does the record of her testimony in the jury trial give any indication of such lack of intelligence. In *Ciriack* v. *Merchants Woolen Co.*, 151 Mass. 152, 155, where question as to the intelligence of the plaintiff, a boy twelve years of age, was made, it appears that "the plaintiff introduced numerous witnesses, who testified that the plaintiff was at the time of the accident a boy of less than the average intelligence of boys of his age." We do not think that an allegation in the declaration, supported alone by the reiteration of counsel, forms a sufficient substitute for evidence. There was also an utter absence of proof that the defendants knew or believed,

or, in the exercise of due care, had any reason to know or believe, that the plaintiff was in any way lacking in the degree of intelligence usually found in girls of her age.

There was also lacking any proof to show that the machine was defective in any way, or not sufficiently guarded, or out of the ordinary use in such machines. Indeed the only reference in the testimony as to the condition of the machine was that given by the plaintiff as to certain changes made after the accident in the location of the guard, and incident thereto, but it is a well settled rule of law that evidence of precautions against further accidents taken after an accident is not competent to show antecedent negligence. As said by Mr. Justice Gray in *Columbia R. R. Co.* v. *Hawthorne,* 144 U. S. 202, 207 : " Upon this question there has been some difference of opinion in the courts of the several States. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the States in which the question has arisen, that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant." See also *Baron* v. *Reading Iron Co.,* 51 Atl. Rep. (Pa.) 979.

A point strenuously urged by the counsel in behalf of the plaintiff was that she was young and inexperienced, and did not know, and failed to appreciate, the dangers and perils of the machine she was working on, and that the defendants, knowing the same, neglected to give her the proper instructions, and sufficient warning and notice of the perils and dangers of working on the machine. The law is too well established to need the citation of authorities, that the defendant was bound to give the plaintiff such notice or instruction of the nature of the risks incident to the service which she undertook as to enable a person of her youth and inexperience in the business intelligently to appreciate the nature of the danger attending its performance. The amount of notice or instruction would

depend in some degree upon the age and intelligence of the employee, and a child of twelve years, the youngest age at which one is allowed to be employed in any factory, manufacturing or mercantile establishment within this State, might require more notice or instruction to appreciate the danger surrounding him or her, so as to be held to have knowingly assumed the risk of his or her employment, than one considerably older. In the case at bar, as we have seen, the plaintiff was nearly seventeen years old, had been shown by Mamie Walsh how to run the machine, and had been warned by Katie Griffin. In addition to this she had had four months actual experience in running it, and she swore that she understood she was to be careful and not get her hand into the rollers. If one employed upon machinery has gained from any source the knowledge how to use it, the master's personal neglect to give instruction will not make him liable for such person's hurt caused by the machinery. *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396. If a girl of the age of the plaintiff, with the instruction and experience the evidence showed that she had, did not appreciate the risks of her employment, it is difficult to imagine when she ever would.

In *Pratt* v. *Prouty*, 153 Mass. 333, the plaintiff, a boy of sixteen, recovered a verdict against the defendant for alleged negligence in setting plaintiff to work upon a dangerous machine without proper instruction or caution. The machine on which the plaintiff in that case was set to work was a skiving machine for shaving off one surface of bits of sole leather used in making the heels of boots. The leather was carried between two small, slowly revolving horizontal cylinders, and against a knife just back of the cylinders. The work of the plaintiff was to serve the pieces of leather to the cylinders, to be taken by them and drawn through between them and against the knife. The court said : " To show negligence in the defendants, it must appear that the danger was such that the plaintiff would not be presumed to know it, and that the defendant did not give him information of it. If he knew and appreciated the danger, he cannot recover. . . . The danger to be guarded against was that the

fingers serving the pieces of leather to the cylinders would be caught between them and drawn through against the knife. This was an open and apparent, and not a hidden danger. Not only were the cylinders and their movements plain to see, but their operation and effect, in drawing in against the knife whatever came between them were obvious, and were constantly demonstrated in their use. That the plaintiff was a boy of at least ordinary intelligence is manifest, and is not denied ; and if he could fail to see and appreciate the danger, all the information and caution that was needed was given to him by the defendants, and his own evidence shows that he knew and understood the danger. He says that the defendants told him that, if he got his fingers in, he would get hurt, that he must look out about his fingers, and, what testimony was not needed to prove, that he knew that, if he put his fingers where the leather went, they would get caught as soon as the leather would. He said, indeed, that he did not realize the danger that it would draw his whole hand in. He may not have realized all the possible consequences of the danger, but that he knew and appreciated the danger of being hurt by having his fingers caught between the cylinders is obvious. That he was inattentive to his work, and careless, was not evidence that he did not know the danger. He was told, and knew, that if he was inattentive and careless he was liable to be hurt, and there is no evidence that the injury was not the result of his own want of care. There is no evidence of negligence on the part of the defendants, and no evidence that the plaintiff did not know and appreciate the danger. The ruling that the evidence was insufficient to warrant a verdict for the plaintiff should have been given."

*Lowcock* v. *Franklin Paper Co.*, 169 Mass. 313, was an action by a boy fifteen years old, who for a month had worked upon a machine having a revolving cylinder and a belt of felting, between which it was his duty to put sheets of paper which had been pasted together, and which by the motion of the two were caught and drawn along and dried by the cylinder, which was hot ; he was injured by having his hand

caught in the machine and burnt by the cylinder. Verdict was rendered for the plaintiff on the ground of the failure of his employers to instruct him of the danger that his hand would be caught if he put it too far in. The court, in granting a new trial, said, by Holmes, J.—"Under the circumstances described, whatever his testimony, an intelligent boy of fifteen must be assumed to have known the danger of his hand being drawn in and brought in contact with the hot inward revolving roll."

*Sullivan* v. *Simplex Electrical Co.*, 178 Mass. 35, was an action by a boy of nineteen employed in a rubber factory feeding rubber into a machine, to be pressed between two revolving cylinders, for injury by having his hand caught between the cylinders, on the ground that he had not received proper instructions. He had been at work several weeks in the factory, and near revolving wheels and rolls, although not at any machine, except that for two weeks prior to the accident he had been assisting a fellow workman upon a machine called a calender. This machine had three rolls of hard material like iron or steel of about the same size as those at which the accident occurred, placed one above the other. The plaintiff's duty in that case was to sit down and keep the material, which was very thin and about two feet wide, coming through these revolving rolls, from creasing as it came off the rolls. The judge, on the jury trial, at the close of the plaintiff's evidence, ruled that the case could not be maintained, and directed a verdict for the defendant. The court, by Hammond, J., in refusing a new trial, *inter alia*, said : "The danger of having one's hand injured if caught between revolving rolls is an obvious danger, and the mere fact that the operator cannot tell the exact degree of the danger if the nature and character of it can be easily seen is not enough to require warning and instruction to a boy of the age of the plaintiff and of ordinary intelligence. Nor is the case changed by the fact that the plaintiff was told if the rubber did not go down itself he should press it down with his fingers. The fair interpretation of the instruction was that he might use his fingers for the purpose of pressing down the rubber, but

we do not think he was justified in thinking that he was safe in doing that without regard to the peril incidental to such an operation, or that he was thereby relieved from the duty of seeing to it that his hand did not go too far down."

(1) In our own State the case of *Day* v. *Achron*, 23 R. I. 627, is so similar to the case at bar as practically to control it, unless there is some circumstance to differentiate them. The case at bar, it seems to us, is stronger than *Day* v. *Achron*, in this, that the instructions to the plaintiff were fuller than in that case. In both cases the plaintiffs were of about the same age; both machines were mangles in laundries; and in both the employees' hands were drawn into and crushed by the machine.

It is claimed, however, that there was an *emergency* in this case that would relieve the plaintiff of the rule that an employee knowing and appreciating the dangers of her employment assumes the chances of injury from the obvious dangers of such employment. The plaintiff swore that she was paying strict attention to business, and, to use her own words—"I was feeding the sheet and the sheet was damp and there was little places like what worms had eaten out and I was feeding the sheet and I tried to push it and it caught onto this board and I pushed and pushed so hard, I never pushed so hard before, the sheet gave way and my hand went into the roller." (Answer to Q. 57.) In another place she said (Answer to Q. 72.): "There was a rail here and in front of this rail was this guard, and I was feeding the sheet and the corner turned up and the sheet was damp and the board was rough and there was this little place here like what worms had eaten the board up, and I went to push the sheet hard and I pushed it harder than I ever had, and as I pushed it, the sheet gave way." In cross-examination she further testified as follows: "Q. 128. When did you first see these holes you speak of? A. When I went on the machine. Q. 129. They had been there all the time? A. Yes. Q. 130. Did you call anybody's attention to them? A. No sir. Q. 131. Had the sheet or the cloth you were ironing, had it ever caught before this time? A. It always

catches all the time because the board was rough.  Q. 132. You had been pushing in the same way you did that morning only you didn't push quite so hard ?  A. Yes.  Q. 133.  And you pushed so hard that when it let go your hand went farther than you meant it to ?  A. Yes sir."

Does this testimony disclose any emergency, for this was substantially all there was ?

"An emergency," as defined by this court in *Mayott* v. *Norcross*, 24 R. I. 187, "is a condition of things appearing suddenly or unexpectedly ; that is, it is an unforeseen occurrence.  As related to the law of negligence, it may properly be defined as any event or combination of circumstances which calls for immediate action without giving time for the deliberate exercise of judgment or discretion ; in short, an exigency."

We fail to discern any emergency in the case at bar.  Here was a girl, nearly seventeen years of age, that had been working on a machine for four months under exactly the same conditions that existed on the day of the injury.  The plaintiff swore, in answer to Q. 75, that these sheets she was using were always damp.  Indeed, we understand that cotton or linen fabrics have to be damp in order to iron them smoothly. The little roughness of the board she referred to, however caused, had always been there, but was nothing she had ever complained of.  It did not appear suddenly or unexpectedly, but antedated her connection with that machine.  Indeed, the very purpose of her tending the machine was to help the cloth to go smoothly through the machine if a corner got turned up, or it stuck, or its progress was in any way impeded ; and it was nothing unusual for the sheets to stick, or get caught, or the corners to turn up, and their tendency to do so she had known for four months, as it was for that length of time she had been loosening or freeing them so they could go through the machine.  We fail to see any emergency or exigency in the sheet's moving, or *giving way*, in the words of the plaintiff, as that the sheet should move was precisely the result she was expecting and trying to produce.

This case seems to us to be so similar to *Day* v. *Achron* as

to be ruled by it, and though the plaintiff's counsel strove to find substantial differences between that case and this, we fail to see them; and the criticism that that case was an extreme one seems to us to be overcome by many cases decided in other States, a few of which we have hereinbefore referred to.

In conclusion, the testimony shows that the plaintiff knew of the danger and how to avoid it; and the opinion of the court therefore is that she must be held to have taken the chances of injury from an obvious danger.

The petition for a new trial is denied, and the case is remitted to the Common Pleas Division with direction to enter judgment for the defendant for costs.

*Wilson & Jenckes and William J. Brown*, for plaintiff.

*Walter B. Vincent*, for defendant.