### GLENMONT LUMBER CO. v. ROY.

#### (Circuit Court of Appeals, Eighth Circuit. November 12, 1903.)

#### No. 1,844.

1. INJURY TO SERVANT—NEGLIGENCE—DUTY OF MASTER.

   The master is not required to supply the best, newest, or safest appliances to secure the safety of his servants, nor is he bound to insure the safety of the place or of the machinery he furnishes. His duty is discharged if he exercises ordinary care to furnish a place and appliances reasonably safe and suitable for the use of his employés.

2. SAME—FACTORY ACT—ASSUMPTION OF RISK.

   The factory act of Minnesota (Gen. St. 1894, § 2248), which requires employers to guard or fence dangerous machinery as far as practicable, does not abolish the defense of assumption of risk. It does not deprive parties of the right to contract regarding the risks of their avocations.

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 172, 173, 181, 182.

3. SAME—ASSUMPTION OF RISK.

A servant, by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the service which he knows and appreciates, and those which an ordinarily prudent person of his capacity and intelligence would have known and appreciated in his situation, including the risks and dangers which arise from the failure of a master to fully discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work, and reasonably safe appliances to use.

4. SAME—ESTOPPEL TO DENY APPRECIATION OF OPEN DANGERS.

An employé cannot be heard to say that he did not appreciate or realize the danger, where the defects were obvious, and the dangers would have been apparent to an ordinarily prudent person of his intelligence and experience in his situation.

5. TRIAL—PEREMPTORY INSTRUCTION—ASSUMPTION OF RISK.

Where the uncontradicted evidence discloses the fact that the defects in the place or in the tools were obvious, and the danger from them apparent to an ordinarily prudent person of the experience and capacity of the servant, when placed in his situation, and the employé entered upon or continued in the service without complaint, the defense of assumption of risk is conclusively established, and the court should instruct the jury to return a verdict for the defendant.

6 INJURY TO EMPLOYÉ—EVIDENCE.

A young man, 20 years of age, who had worked around sawmills for some months, and had used a cant hook 6 days, stood upon a bumper 18 inches high, composed of a timber 12 by 12, and 12 feet long, and a timber 6 by 12, and from 6 to 10 feet long, placed upon it so that it would present a face of 6 inches, took hold of a log lying upon an inclined deck by the side of the bumper with a cant hook, lifted, his cant hook slipped, and he fell forward onto the carriage of a sawmill, and was borne against the saw, so that his hand was injured. The saw was boxed, with the exception of the space requisite for the movement of logs against it which were to be sawed. There was no post at the lower end of the bumper for the workman to steady himself against, as there was in some other mills. The bumper was somewhat shaky, and the cant hook was loose in the socket. The plaintiff sought to recover damages on account of these defects. They were open and visible, and he testified that he was aware of them all, but that he did not realize the danger.

*Held*, the defects were obvious, and the dangers so apparent to an ordinarily prudent person of his intelligence and ability that by continuing in the employment five days he assumed the risk of these defects and dangers, and that the court should have instructed the jury to return a verdict for the defendant.

Thayer, Circuit Judge, dissenting.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the District of Minnesota.

H. H. Grace, for plaintiff in error.

R. J. Montague, for defendant in error.

Before SANBORN, THAYER, and VAN DEVANTER, Circuit Judges.

SANBORN, Circuit Judge. The plaintiff below, Theodore Roy, brought an action against the Glenmont Lumber Company, a corporation, for alleged negligence which he averred caused him to fall upon a log carriage in the defendant's sawmill, and to lose a part of

¶ 3. Assumption of risk incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

his hand against the saw. There was a verdict and judgment for the plaintiff, and the alleged error in the trial is that the court below refused to instruct the jury to return a verdict for the defendant. The acts of negligence upon which the plaintiff relied when the evidence closed were a failure to properly box the saw, a failure to erect and maintain a square post near the lower end of the bumper, the fact that the bumper was shaky and too narrow at the top, and the fact that the cant hook which the plaintiff used was worn, and the hook was loose in its socket. The material facts disclosed by the evidence were not in dispute, and they were these: The plaintiff was a young man, 20 years of age, when, on October 13, 1900, he was injured. He had been working around the sawmill all the preceding summer. The logs were drawn into the mill by a chain, and then thrown by machinery to the right and left, where they rolled down log decks in the form of inclined planes to carriages, on which they were borne to the band saws and cut into lumber. The log deck on which this accident happened was about 20 feet long and 12 feet wide. With the exception of a small pit near the rear end of it, it was planked over, and there were two skids of railroad iron 8 inches high upon it, on which the logs rolled down to the carriage. Across the forward end of this deck was a bumper constructed to prevent the rolling logs from striking the sawyer, who stood below, opposite the saw, and near the forward end of the log deck. The saw was boxed, with the exception of a space of sufficient size to permit the largest logs sawed in that mill to pass through the boxes and be turned into lumber. The bumper was constructed of two timbers—one 12 by 12, which was 12 feet long, and the other 12 by 6, which was from 6 to 10 feet long. The latter was laid on the former, so that its face was 18 inches above the deck. This face, originally 6 inches wide, had become worn by use until it was 5½ inches in width. These timbers were secured by bolts, which either passed through them and through the log deck below, or through the upper timber and into the lower one, where they were fastened in place by nuts. The frequent blows of the rolling logs upon the timbers had made the bolts wabbly and the bumper shaky. There was no iron or other post near the lower end of the bumper for the workman to steady himself with, although posts of this character were maintained in similar positions in some other sawmills. The cant hook was loose in its socket, had no prongs at the foot of the handle, such as projected from some such tools, and the point of the hook was dull and about an inch long, while those of some other hooks were two inches in length. Until four or five days before the accident Roy had been working on the mill pond, driving logs up to the chain with a pick pole. The foreman then assigned him to tend the chain. He told the foreman that he had a job that he could do pretty well, and that he did not see why he changed him. But the foreman directed him to proceed to take charge of the logs as they were drawn up by the chain. His duties were to stop the logs at the proper place as they came into the mill, and to throw them to the right and to the left by means of levers which actuated machinery which accomplished this result. Sometimes as the logs rolled down the deck their forward ends would strike against the bumper, and they

would stick. It was then the plaintiff's duty to loosen and roll them down by the use of the cant hook. This result could be accomplished either by walking out on the bumper and using the cant hook on the forward end of a log, or by going to its rear end and using the cant hook there. After Roy had been at work in this position four or five days, and after he had repeatedly walked out upon the bumper and used the cant hook to roll logs down the deck every day of his employment as a tender of the chain, four logs stuck; he walked out upon the bumper, took hold of one of them with the cant hook, lifted, the hook slipped, he fell forward onto the carriage below, and one of his hands was borne against the saw and injured before it could be extricated.

The condition of the saw and of the boxing about it, and the absence of any post near the lower end of the bumper, if defects, were open, visible, and obvious ones. The following testimony of one of the plaintiff's witnesses—the workman who had preceded him in the discharge of the duty of tending the chain—was uncontradicted:

"Q. Working on the log deck, you can see your work as plainly as you can see this table? A. Yes, sir. Q. You can see that log deck as plainly as you can see anything? A. Yes, sir. Q. And you could see these timbers that make up the bumper just as plainly as you can see either of these tables in the courtroom? A. Yes, sir. Q. It is all in plain, open sight? A. Yes, sir. Q. You could see it just that way—that one stick of timber was put on top of the other—could you not? A. Yes, sir. Q. But you walked on it, and you walked there freely, whether it was loose or whether it was tight? A. Certainly. Q. You couldn't walk on there without knowing whether it was loose or whether it was tight, could you? A. No, sir. Q. A man couldn't walk on there more than once without knowing just what condition it was in, could he? A. No, sir. Q. And you worked there for a long time, you say? A. Yes, sir. * * * Q. There is nothing about a cant hook, so far as the manner in which it is put up and made, but that you can see how it is made, and how it works, by looking at it, taking it up, and handling it? A. No, sir. Q. If a cant hook is loose, you will know it just as soon as you take it up in your hand, will you not? A. Why, yes; certainly. Q. You couldn't take it up and handle it without knowing it is loose? A. No, sir. Q. So that, if you took up the cant hook that you have testified to was in the mill—the one with the heavy, oak handle—if that was loose, the moment you took it up and undertook to handle it you could see it was loose? A. Yes, sir. Q. You could see that at once? A. Yes, sir. Q. You couldn't handle it without knowing that it was loose? A. No, sir. Q. You could see that in an instant? A. Yes, sir. Q. State whether or not there was any projection on the iron ring at the end of the cant hook? A. Yes, sir. Q. You couldn't handle it very well without seeing these projections? A. No, sir. Q. You couldn't handle it very well without knowing there were no projections on there, could you? A. No, sir. Q. A cant hook is a plain, ordinary tool used in and about the lumber business? A. Yes, sir. Q. Used for the moving of logs? A. Yes, sir."

The plaintiff testified that he noticed that the timbers constituting the bumper were a little loose and shaky while he was working there; that the first work he ever did lumbering was rolling logs into a lake with a cant hook; that at that time he used such a tool two days; that the first day he worked with a cant hook he knew that if the hook was fast in the log it would not slip, and if it was not it would slip; that, the moment he took up the cant hook which he was using when he was hurt, he saw that it was loose in the socket; that he used it frequently many times an hour each of the five days he was working in the place where he was injured before he was hurt; that he knew

that if the cant hook did not catch in the log it would slip; that it had slipped several times before he was injured; that he did not realize the danger that was there—and as follows:

"Q. You don't know what caused you to fall, do you? A. Yes, sir. Q. What was it? A. Just as I caught hold, the cant hook— If the cant hook had not slipped, I wouldn't have fell. Q. You say the cant hook. State whether you were positive about that? A. Yes; just as I got hold of the log it slipped, and I went right over with it. Q. The cant hook slipped? A. Yes, sir. Q. Then the slipping of the cant hook caused you to be thrown over there? A. Yes, sir."

Conceding, without considering or deciding the question, that there is some evidence in this case that the defendant failed to completely discharge its duty to exercise ordinary care to furnish for the plaintiff's use a reasonably safe place and reasonably safe appliances, this case is ruled by these established principles of law:

The master is not required to supply the best, newest, or safest appliances to secure the safety of his servants; nor is he bound to insure the safety of the place or of the appliances he furnishes. His duty in this respect is discharged when he has exercised ordinary care to furnish a place and appliances reasonably safe and suitable for the use of his employés. Washington, etc., R. Co. v. McDade, 135 U. S. 554, 570, 10 Sup. Ct. 1044, 34 L. Ed. 235; Patton v. Railway Co., 179 U. S. 658, 661, 21 Sup. Ct. 275, 45 L. Ed. 361.

The factory act of Minnesota (Gen. St. 1894, § 2248), which requires employers to guard or fence dangerous machinery so far as possible, does not abolish the defense of assumption of risk. It does not deprive parties of their right to contract regarding the risks of their avocations.

A servant, by entering or continuing in the employment of a master without complaint, assumes the risks and dangers of the service which he knows and appreciates, and those which an ordinarily prudent person of his capacity and experience would have known and appreciated in his situation. Choctaw, Oklahoma & Gulf Ry. Co. v. McDade, 24 Sup. Ct. 24, 48 L. Ed. ——; opinion filed Nov. 2, 1903.

An employé cannot be heard to say that he did not appreciate or realize the dangers where the defects were obvious, and the dangers would have been known and appreciated by an ordinarily prudent person of his intelligence and experience in his situation. Choctaw, Oklahoma & Gulf Ry. Co. v. McDade, 24 Sup. Ct. 24, 48 L. Ed. ——; opinion filed Nov. 2, 1903.

Among the risks and dangers which the servant may thus assume are those which arise from the failure of the master to fully discharge his duty to exercise ordinary care to furnish the servant with a reasonably safe place to work, and reasonably safe appliances to use.

Where the uncontradicted evidence discloses the fact that the defects in the place or in the tools were obvious, and the dangers from them would have been apparent to an ordinarily prudent person of the intelligence and capacity of the servant, if placed in his situation, and the employé entered upon or continued in the service without complaint, the defense of assumption of risk is conclusively established, and the court should instruct the jury to return a verdict for the defendant.

Every defect of which the plaintiff complains—the condition of the saw, the absence of the post at the lower end of the bumper, and the looseness of the cant hook in its socket—was obvious to a casual inspection, and was known to him within one hour after he entered upon the discharge of the duty of tending the chain. He was 20 years of age, and his testimony clearly discloses the fact that his ability, intelligence, and perception were not inferior to those of the ordinary young man of his age and experience. A minor assumes the risks and dangers that he actually knows and appreciates, and those that are so apparent that one of his age, experience, and capacity would, in the exercise of ordinary care, know and appreciate them, to the same extent as does the adult. Bohn Mfg. Co. v. Erickson, 5 C. C. A. 341, 344, 55 Fed. 943, 946; Engine Works v. Randall, 100 Ind. 293, 298, 300, 50 Am. Rep. 798; Berger v. Ry. Co., 39 Minn. 78, 38 N. W. 814; Sullivan v. Mfg. Co., 113 Mass. 396; Fones v. Phillips, 39 Ark. 17, 38, 43 Am. Rep. 264. The dangers from the defects which have been mentioned were so apparent that knowledge and appreciation of them were unavoidable by a young man of 20 years, possessed of ordinary prudence and perception. He fell and received his injury because the point of his cant hook slipped when he was standing upon the inclined bumper, endeavoring to lift the log. He knew that the hook was loose in its socket—that its point was short, dull, and liable to slip—for he testified that it had slipped several times before while he was using it. He knew that if it slipped there was danger that he would fall forward toward the carriage and toward the saw, and come within reach of its teeth. There was nothing hidden, recondite, uncertain, about the dangers from the defects of which he complains. They were so plain, open, apparent, that any young man 20 years of age, of ordinary ability and prudence, who had used a cant hook 2 hours, to say nothing of 6 days, and who had worked about logs for months, could not have avoided a knowledge and an appreciation of them if he were placed in the situation of the plaintiff. Nevertheless he continued in the service, and refrained from notifying his master of the defects he now mentions, when his opportunity to know them and his knowledge of them were at least equal to those of his master or of his inspectors, and his acquaintance with them far more intimate and familiar. The conclusion is unavoidable that, by entering upon and continuing in his service for five days in the presence of obvious defects, which he knew, and of plain, apparent dangers, which an ordinarily prudent person of his experience and intelligence in his situation could not have failed to appreciate, he assumed the risk of the injury which resulted from them, so that no cause of action ever arose in his favor against the defendant; and the court should have instructed the jury to that effect. This application of the rules of law which govern this case is sustained and illustrated by the following cases, in which courts have held that it was the duty of the trial court to direct a verdict for the employer: Higgins Carpet Co. v. O'Keefe, 51 U. S. App. 71, 81, 79 Fed. 900, 902, 25 C. C. A. 220, 222, in which a boy 15 years of age, who had been at work in a room with a picking machine, was assigned to feed it, and permitted his hands to slip into the exposed

126 F.—34

cogs, which the factory act of New York required the master to keep covered; Buckley v. Mfg. Co., 113 N. Y. 540, 21 N. E. 717, wherein a boy 12 years old slipped and threw his fingers into exposed cogs; Engine Works v. Randall, 100 Ind. 293, 50 Am. Rep. 798, in which a boy 19 years of age permitted his hands to engage with mashing cogs; Berger v. Ry. Co., 39 Minn. 78, 38 N. W. 814, wherein a boy, in feeding rollers in a boiler-making shop, permitted his hands to slip between them; Cudahy Packing Co. v. Marcan, 45 C. C. A. 515, 517, 106 Fed. 645, 647, 54 L. R. A. 258, in which a block on which a boy 17 years of age was standing slipped upon the greasy floor, and caused him to throw his hand into a hasher; Glover v. Bolt Co., 153 Mo. 327, 55 S. W. 88, in which a boy engaged in pulling iron from a pile fell, and threw his fingers between closing shears; Sullivan v. Simplex Electrical Co., 178 Mass. 35, 39, 59 N. E. 645, in which the hands of a boy 19 years of age, who was feeding rubber between rollers, were caught and injured by them.

A more exhaustive discussion of the rules of law on which this decision is based, a citation, review, and analysis of the authorities which sustain them, and which compel the ultimate conclusion in this case, may be found in the opinion of this court, filed herewith, in St. Louis Cordage Co. v. Miller, 126 Fed. 495, a case which was argued at the same term, and which has been considered at the same time with the case in hand.

The judgment below must be reversed, and the case remanded for a new trial, and it is so ordered.

THAYER, Circuit Judge (dissenting). I dissent from the opinion of the majority of the court in this case for the following reasons:

The complaint on which the case was tried charged that the employer, the Glenmont Lumber Company, was negligent in three respects: First, in not providing the plaintiff with a safe place to stand when he was doing his work, as it might easily have done; second, in providing him with a defective cant hook with which to handle logs; and, third, in leaving the saw, in proximity to which he worked, unboxed or uncovered. At the conclusion of the case the defendant company asked the court to direct a verdict in its favor, which request the court overruled, and the defendant excepted. The refusal of this request is the sole error assigned.

It is conceded, apparently, by the majority of the court, or at least they decline to discuss that question, that there is some evidence in the case tending to show that the defendant company failed to discharge its duties in the matter of providing him with a safe place to work, and with reasonably safe tools and appliances wherewith to work. Under the testimony in the case, this concession, I think, is clearly necessary. It was the province of the jury to decide whether the plaintiff's employer had provided him with a reasonably safe place to stand, or whether it had exercised proper care and foresight in that respect. The evidence shows that the plaintiff was a young man, about twenty years of age; that his customary work was to float logs up to the foot of a slide, and put a chain around them, so that they could be drawn onto the log deck in the mill; that it was the business of another man, by the name of Erickson, who stood on

the log deck, to kick the logs from the deck onto which they had been drawn, so that they would roll at right angles down an incline consisting of two pieces of railroad iron, to the saw carriage, which carried the logs forward to the saw. The logs were thus kicked off from the deck by means of a lever which Erickson handled. At the end of the log deck where Erickson stood, two pieces of timber were laid parallel to the incline, which made a bumper, as it is termed, some two feet high. This bumper was placed where it was to prevent the logs, as they rolled down the slide, from hitting the sawyer. The upper timber composing this bumper was only five or six inches wide, and it sloped toward the saw carriage. It sometimes happened that, as a log was kicked off from the log deck, its end would hit against the bumper, preventing it from rolling down the incline as it ought to do. On such occasions it was the duty of Erickson to release the log, by means of a cant hook or lever, so that it would roll. The evidence shows very clearly that it was his habit, when a log got stuck, to stand on the top of the bumper, which was only five or six inches wide, and, by means of the cant hook or lever, pry the log loose, so that it would roll down to the carriage. He could, of course, go around to the other end of the log, but by doing so he lost time, and his duties required him to be expeditious. Besides, there was a depression or hole at the other end of the logs, which made it inconvenient to stand at that end and release the logs. Four or five days' before the accident occurred, Erickson was taken sick, and the foreman directed the plaintiff, Roy, to take his place and do his work temporarily. The plaintiff seems to have been disinclined at first to do so, but he obeyed the orders of the foreman. A few days after he was assigned to this job, a log became stuck. He took the cant hook, got on top of the bumper, as he had seen Erickson do, and undertook to pry the log loose. The cant hook, for some reason, slipped when he gripped the log, and as a result he fell forward onto the saw carriage, was carried against the saw, losing three of his fingers, and would have been killed, but for the fact that the sawyer, seeing him fall, stopped the saw.

Judge Shiras, who tried this case below, instructed the jury to the following effect:

"Now, as I said before, the rule of law is that where a master furnishes a place of a certain character, or appliances of a certain nature, for the use of his employé, and that employé enters upon the work, and the employé has a reasonable knowledge, or a fair opportunity to know the character of the place that he is required to work in, or the nature and character of the appliances that are furnished him to work with, so that you can fairly say that he knows, as well as the master, the dangers, risks, and hazards that will be cast upon him by working in the place that is furnished him, and by the use of the appliances that are furnished him, then, if he has knowledge of that, and he continues in the employ, and receives pay from the master, making no complaint about it, that would justify you in finding that he was willing to undertake and carry it on in the place and with the appliances that the master furnished him, and he would therefore be held, in law, to have assumed the risks and dangers pertaining to the situation as it then existed. Now, in determining this matter, as I have already stated in the case, you will look at the situation as it actually existed, as to whether the plaintiff assumed the risk of these appliances and the place, and the dangers connected with them. The theory is that an employé has assumed those risks, by

reason of the fact that he has knowledge of them—that he has the same knowledge that the master has of these dangers that are created by the place and the appliances that are furnished him—and, knowing them, he has continued in the work. You will look, therefore, at the age of the employé, his knowledge, his experience, and what his powers of observation are at the time he is called upon to enter into the work; what the opportunities are or were for him to know and ascertain and have knowledge of the dangers and risks surrounding him when working in that place with these appliances. But the employé is not to be held to have assumed these risks and dangers if they are due to the negligence or want of reasonable care and caution on the part of the master, unless it clearly appears, and you can fairly find from the evidence, that he knew or had a reasonable opportunity of knowing, as fully as the master did, and as fairly as the master, the character of the dangers, and what risks and hazards he was really assuming when he continued in the work."

He further instructed the jury that, when he spoke in his charge about the plaintiff's seeing the danger, he meant "not merely with the eye alone, but with the brain, in the sense of realizing it—having an opportunity to know and have knowledge of the dangers of the surroundings of the situation."

Now, my associates, taking no note of the fact that the plaintiff below was only 20 years old, and assuming, apparently, that a young man of that age must of necessity possess as much caution and prudence as one having years of experience, and taking no note of the fact that the law cast on the defendant company, rather than the plaintiff, the duty, when it constructed this bumper, of foreseeing the risk to which its employés would be thereby exposed, and taking no note of the fact that the plaintiff had only worked on the log deck a few days before he was hurt, and that thousands of young men of his age, if ordered by their foreman to work in such a place, would have obeyed the order without complaint, and without a realizing sense of the danger, even if the danger had been greater, confidently find that he did see and appreciate the danger, and did voluntarily consent to assume it and absolve the defendant company from all liability. I am unable to assent to any such doctrine, the result of which, as it seems to me, will be to enable employers to expose their employés to all sorts of risks with the utmost nonchalance; saying to them, when hurt: "You cannot call on us for compensation. You saw the danger to which we negligently exposed you, or at least you ought to have seen it and you might have quit our service if you were unwilling to incur it." I am of opinion, for the reasons stated at length in my dissenting opinion in the case of St. Louis Cordage Co. v. Mary Miller (C. C. A.) 126 Fed. 495, that this ought not to be the law, under any enlightened system of jurisprudence, and that it is not the law. At all events, juries should be permitted to find, in such cases as this, whether the servant, with a full knowledge and appreciation of the risk, agreed with his master to assume it and absolve him from liability. This is an inference of fact, and juries should be left to determine it. It is an invasion of the province of the jury to do otherwise. I think the learned trial judge took the right view of this question, and that the verdict of the jury, which awarded the plaintiff nothing more than reasonable compensation for the injuries which he had sustained, ought to be upheld.