STEWART et al. v. BRUNE.

(Circuit Court of Appeals, Eighth Circuit. April 27, 1910.)

No. 3,112.

1. APPEAL AND ERROR (§ 1031*)—REVIEW—HARMLESS ERROR—PRESUMPTIONS AS TO EFFECT OF ERROR.

The presumption always is that error produces prejudice, and it is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice, and could not have prejudiced, the complaining party, that the rule that error without prejudice is no ground for reversal is applicable.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4038–4046; Dec. Dig. § 1031.*]

2. TRIAL (§ 110*)—RECEPTION OF EVIDENCE—MISCONDUCT OF COUNSEL.

In an action by an employé to recover for a personal injury, it was prejudicial error to permit plaintiff's counsel on the examination of a juror to ask questions the evident purpose and effect of which were to convey to the jury a strong intimation that defendant was insured against such liabilities, and that the insurance company was the real party in interest as defendant, contrary to what appeared from the record.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 271; Dec. Dig. § 110.*]

3. MASTER AND SERVANT (§§ 217, 238*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF SERVANT—ASSUMPTION OF RISK.

Plaintiff, who was a licensed engineer with several years' experience in operating derricks, was operating a derrick for defendants in pulling sheet piling, used in constructing the foundation of a building, when he was injured by the breaking of an eyebolt to which one of the guy ropes of the mast was attached. The derrick was of a common and usual construction, practically new, and was sound, including the eyebolt, and being used for an ordinary purpose. It was shown that the amount of power applied to a piling was left wholly to plaintiff's control, and that, if after one pull the piling did not come out, it was cut off and left in the ground. Held, that if, as he alleged, the derrick and eyebolt were being at the time subjected to an excessive strain he alone was responsible therefor, and that if, as he also alleged, the number of guy ropes was insufficient, and they were not anchored at sufficient distance from the mast, he was as competent as any one to know such fact, and assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 587, 744; Dec. Dig. §§ 217, 238.*]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Action by Fred Brune against Alexander M. Stewart and James C. Stewart. Judgment for plaintiff, and defendants bring error. Reversed.

Percy Werner (Seneca N. Taylor, on the brief), for plaintiffs in error.

D. D. Holmes (Benj. J. Klene, on the brief), for the defendant in error.

Before SANBORN, Circuit Judge, and RINER and WM. H. MUNGER, District Judges.

RINER, District Judge. This was an action brought by the defendant in error, hereafter called the plaintiff, against the plaintiffs in error, hereafter called the defendants, to recover damages for personal injuries alleged to have been sustained by the plaintiff on or about the 5th day of December, 1907.

The defendants were contractors, and at the date of the injury complained of by the plaintiff were engaged in the erection of a building at the northeast corner of Broadway and Pine streets, in the city of St. Louis. In the erection of this building they were using what is designated in the record as a "guyed derrick" for the purpose of lifting and moving material and pulling up piling. The upright mast of the derrick was about 80 feet high, and a boom about 70 feet long was connected to said mast at its base, together with the usual pulleys and the usual fall and boom lines. The derrick was held in an upright position by means of four steel guy lines. These guy lines were each fastened at one end in a separate eyebolt at the top of the mast, the other end of the guy lines being anchored to the ground about 63 feet from the base of the derrick, and in such directions therefrom as to hold the mast in a perpendicular position. The derrick was operated by means of a steam engine. The plaintiff was the engineer and was in charge of the engine at the time he received the injuries of which he complains. While the derrick was being used for the purpose of drawing out sheet piling, or boards, which had been placed in an upright position in a trench as a mold for concrete, one of the eyebolts at the top of the mast broke and the derrick fell to the ground, something, supposedly the guy line, striking the plaintiff and injuring him. The eyebolt which broke was made of 1½ inch steel and the breakage revealed a clean surface without flaw or weld.

The testimony shows that the derrick was a new one, of approved type, and manufactured by a reputable firm; that the use to which it was being put was a usual, ordinary, and appropriate one; that the derrick was sound in all its parts, and had been carefully inspected before being set up for use at the place where the accident occurred; that it was designed to raise twelve tons with four guy ropes. The method employed in taking out these sheet piling was to fasten a chain, attached to the boom, around the upper end of the piling, start the engine, and pull the piling out. If after taking a pull on the piling it did not come out, it was cut off and left in the ground. The record shows that prior to the time of the accident the men operating the derrick had in the manner just described taken out 60 or 70 of these piling. The plaintiff testified that he was a licensed engineer and derrick operator, and had been engaged in that employment for several years prior to the time of the accident. The negligence charged in the petition is that the derrick, "as constructed, erected, and maintained was dangerous and unsafe for the purpose for which it was being used in the erection of said building by reason of the said guy ropes and the said eyebolts by which it was secured being of an insufficient number and strength." The answer of the defendant con-

sisted of a general denial, and an allegation of contributory negligence.

In reply the plaintiff admits that the derrick at the time of the accident was being subjected to more than the usual strain. The averment is as follows:

"Plaintiff alleges that it is true, however, that said derrick, guy ropes, and eyebolts, as constructed, erected, and maintained, were being subjected to a greater strain than they were calculated to sustain, and further avers that plaintiff did not know at the time, nor by exercise of ordinary care could have known, that said derrick guy ropes and eyebolts, as constructed, erected, and maintained, were being subjected to a greater strain than they were designed and calculated to sustain."

At the trial, counsel for the plaintiff, while conducting the examination of the jury on voir dire, propounded the following questions to a juror:

"Q. Does your firm carry any insurance in the Ocean Liability Insurance Company? A. Not that I know of. I don't know what insurance the firm carries.

"Q. Would the fact that the Ocean Insurance Company, if such should be the fact, was the real defendant in the case, and the one who was defending, make any difference in case your company was insured by them?"

This question was objected to by counsel, and the court said:

"I am not able to say as to that. He asked the question whether or not he has any connection with the company mentioned, whether that fact would have any effect upon him if he did. That is the question."

Counsel for the defendant then stated that his objection was directed to the last question, and the court further remarked:

"The court will hold that this question, whether this concern mentioned by the counsel for plaintiff has insured the men in the employ of this defendant, may be asked. * * * Counsel had better state right here whether or not this company that has been mentioned—what is the name?

"By Counsel for Plaintiff: I don't know the full name. It is commonly known as 'The Ocean Insurance Company.'

"By the Court: If counsel desires, they may state whether the Ocean Insurance Company is interested in this suit or not."

Counsel having declined to make any statement on the ground that it was immaterial, the court further said:

"Then the question may be asked, and answered. Here is a matter that in my judgment is perfectly proper to be inquired about. This man has sued Stewart & Co., and if Stewart & Co. are carrying insurance in that company, the Ocean Insurance Company, and the Ocean Insurance Company is ultimately interested in that matter, whether they are parties to the suit or not, inquiry may be had as to the connection they have, inasmuch as counsel have declined to say whether they have or not, I will permit the inquiry."

These several questions by counsel and rulings by the court were properly excepted to and are assigned as errors.

Under the issues formed by the pleadings, and in view of the answer of the juror to the first question, the purpose of the second question is we think at once apparent. It was well calculated, as suggested by the Supreme Court of Illinois in McCarthy v. Spring Valley Coal Company, 232 Ill. 473, 83 N. E. 957:

"To intimate strongly to the jury that the appellant was insured against liability for accidents of this character and that the party who would have to respond for any judgment which might be rendered was the insurance company." Chybowski v. Bucyrus Co., 127 Wis. 332, 106 N. W. 833, 7 L. R. A. (N. S.) 357; Howard v. Beldenville Lumber Co., 129 Wis. 98, 108 N. W. 48.

The question whether or not the defendants were insured was wholly foreign to the issues being tried, and the plaintiff would have been precluded from making direct proof of that fact, even if it existed. This indirect attempt to get before the jury extraneous matter or issues that were foreign to the case could not be other than prejudicial, intensified in this case by the court's inquiring in the presence of the jury into the relationship of the defendants' counsel with parties not before the court, and thus placing counsel in the embarrassing position of either making a disclosure or admission which he might feel he had no legal right to make, or, by his silence, take the risk of having the jury infer something more prejudicial even than the admission sought to be extorted would perhaps convey. And then, as if to place beyond all doubt the inference which might be drawn from the question objected to, that the insurance company and not Stewart & Co. was the real defendant, the court added:

"This man has sued Stewart & Co., and if Stewart & Co. are carrying insurance in this company, the Ocean Insurance Company, and the insurance company is ultimately interested in that matter, whether they are parties to the suit or not, inquiry may be had as to the connection they have, inasmuch as counsel have declined to say whether they have or not, I will permit the inquiry."

While it is quite true that an appellate court will not ordinarily consider whether the amount of damages awarded by the jury was, under the evidence, excessive, it is proper, as bearing upon the possible effect upon the jury, to consider the impropriety of bringing into the trial of a case matter wholly unconnected with it, the direct tendency of which may well be to prejudice one of the parties, and the extent of which it is not always, if ever, possible to measure. "The presumption always is that error produces prejudice. It is only when it appears so clear as to be beyond doubt that the error challenged did not prejudice and could not have prejudiced the complaining party that the rule that error without prejudice is no ground for reversal is applicable." Union Pacific Railroad Co. v. Field, 137 Fed. 14, 69 C. C. A. 536; United States v. Gentry, 119 Fed. 75, 55 C. C. A. 658; Moores v. Bank, 104 U. S. 625, 26 L. Ed. 870; Gilmer v. Higley, 110 U. S. 47, 3 Sup. Ct. 471, 28 L. Ed. 62; Railroad Company v. O'Brien, 119 U. S. 103, 7 Sup. Ct. 118, 30 L. Ed. 299; Mexia v. Oliver, 148 U. S. 675, 13 Sup. Ct. 754, 37 L. Ed. 602; Railroad Company v. O'Reilly, 158 U. S. 337, 15 Sup. Ct. 830, 39 L. Ed. 1006; Peck v. Heurich, 167 U. S. 629, 17 Sup. Ct. 927, 42 L. Ed. 302.

The next assignment of error to be noticed is based upon the refusal of the court at the conclusion of all of the evidence to instruct the jury to return a verdict for the defendant. The testimony showed conclusively that the derrick being used at the time the plaintiff received his injuries was practically new and sound; that before it was erected at this place it was carefully inspected and no defects whatev-

er were found in it; and that it was fit for the purposes for which it was then being used. It is true that an expert, Prof. Kinealy, testified that the stress on the eyebolt at the top of the mast with the guy lines placed as they were in this case with the engine pulling so as to lift four tons would be 62,536 pounds to the square inch, and that a bolt of this character would not stand a stress greater than 60,000 pounds to the square inch. He further testified that, if the guy lines had been placed further away from the mast, the stress on the eyebolt would have been decreased, also that the placing of additional guy lines to the mast would lessen the stress on the eyebolt. He further testified that that model of derrick was one that had been used for a great many years, but he nowhere testifies that it was unfit for the purposes for which it was being used, or that there was any danger in its use so long as the stress did not exceed 50,000 or 60,000 pounds per square inch.

It is to be borne in mind that the plaintiff was a licensed engineer and derrick operator of many years' experience; that he knew the derrick was supported by four guy lines and the distance at which those guy lines were anchored to the ground from the foot of the mast. He had worked with this and another derrick with the same engine at another place, and was familiar with its construction, and, as operator of the derrick, he was charged with the duty of pulling out only the sheet piling which came within its capacity, erected as it was, the whole matter of the application of power, and how much it was proper and safe to use, was left entirely to his discretion and judgment. His testimony on this point is as follows:

"Q. Who was it that directed the amount of power when at the engine? A. I did.

"Q. You as operator?  A. Yes, sir.

"Q. That was left entirely to your judgment and discretion and your method of operation?  A. Yes, sir.

"Q. You say that after it goes above three tons it is very difficult to tell how much you are pulling?  A. Well, you can tell three to three and a half or four tons."

When a board was encountered which resisted beyond the capacity of the derrick, the engineer had simply to desist in his attempt, and the testimony shows the board was abandoned and the top cut off level with the ground. As a licensed engineer and operator of the derrick, he knew, or by the exercise of reasonable care might have known, of the circumstances under, and the purpose for, which it was being used, and to govern himself according to the situation as it existed. He was not asked or directed to use the machine beyond its capacity as it was erected. He alone had control of the power, and must have fully appreciated the dangers of applying it beyond the capacity of the derrick, and, if he saw fit to apply power beyond the capacity of the derrick as constructed, he alone was responsible for the result.

If, indeed, it can be said that the appliance was defective as erected, because the defendants had only used four guy lines when they should have used six, or because they had not anchored the guy lines to the ground at a sufficient distance from the mast, that fact was well known to the plaintiff, as he was engaged in operating this derrick for some

days before the injury happened. The manner in which the derrick was erected was apparent to his observation, and if, as he contends, the defendants were negligent in this respect, the case would fall within the well-known rule that where an employé receives for use a defective appliance, and with knowledge of the defect continues to use it without notice to the employer, he cannot recover for an injury resulting from the defective appliance thus voluntarily and negligently used. Kirkpatrick v. St. Louis & San Francisco Railroad Company, 159 Fed. 855, 87 C. C. A. 35; St. Louis Cordage Company v. Miller, 126 Fed. 495, 61 C. C. A. 477, 63 L. R. A. 551; Glenmont Lumber Company v. Roy, 126 Fed. 524, 61 C. C. A. 506; Denver & R. G. R. Co. v. Norgate, 141 Fed. 247, 72 C. C. A. 365, 6 L. R. A. (N. S.) 981; Federal Lead Company v. Swyers, 161 Fed. 687, 88 C. C. A. 547. So that, in any view that may be taken of the case as disclosed by the record, we think the defendants were entitled to have the jury instructed to return a verdict in their favor, and the refusal of the court to do so was error.

For the errors mentioned the judgment is reversed, with instructions to grant a new trial.