HENRY GLANTZ, ADMINISTRATOR, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED JUNE 10, 1910. No. 16,001.

1. **Master and Servant: ASSUMPTION OF RISKS: BURDEN OF PROOF.** A servant assumes the ordinary risks arising from the manner of conducting the master's business, in which he is to take part, and from the appliances used therefor, when such risks are known to him, or are apparent and obvious to persons of his experience and understanding, if he voluntarily enters into the

employment, or continues in it without complaint or objections to the hazards; the presumption in such case is that such risks have been assumed by him, and in order to recover for injuries caused thereby the burden is upon the plaintiff to establish an exception to the rule. Unless he has done so, it is error to instruct the jury that "the burden is on the defendant to show that the plaintiff has assumed the risk of the accident complained of."

2. ———: ———: INSTRUCTIONS. In an action by the administrator of the estate of one who was struck and killed by a passing switch engine while employed and working as a section hand or trackman, who it appears knew the dangers and assumed the risks of such employment, it is error to instruct the jury that "It is the duty of the master to exercise reasonable care to provide a safe place for the servant to work."

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Reversed.*

*James E. Kelby* and *Byron Clark*, for appellant.

*Wilmer B. Comstock*, contra.

BARNES, J.

Action for damages for the death of plaintiff's intestate, alleged to have been caused by the wrongful act of the defendant. Plaintiff had the verdict and judgment, and the defendant has appealed.

It appears that the plaintiff's intestate, Philip Feuerstein, was, on the 22d day of December, 1906, and theretofore had been, employed by the defendant as a sectionman, and was working on that section of the defendant's railroad track extending from Lincoln to Havelock; that while repairing one of defendant's switch tracks, at or near Havelock, on that day, he was run over and killed by one of defendant's switch engines.

The plaintiff, as grounds for a recovery, alleged, in substance, that the switch engine which ran over Feuerstein was improperly and negligently constructed, in that it was equipped with a high square tank which obstructed the view of the engineer and fireman so that they were

unable to see the deceased and warn him of his danger; that it was the custom of the defendant in the Havelock yards to have a switchman stationed on the footboard of its switch engines in order to warn persons on its tracks of its approach, and that at the time of the accident this custom was not observed; that the escaping steam from a passing freight train rendered it impossible for the deceased to hear or see the approaching engine which ran him down, or to hear the ringing of the bell thereof, if it was ringing. The defendant denied the allegations of negligence, alleged assumption of risk, and pleaded the contributory negligence of the deceased as a defense to the action. The reply was a general denial.

To maintain the action on his part, plaintiff called as a witness one Henry Seder, who was working with the deceased at the time he was killed, and who testified, in substance, that they were working at a switch near Havelock; that a freight train came along on the main line about 40 feet from them; that at that time a switch engine was backing toward the switch on which they were at work; that steam escaped from the freight engine and made a noise—a loud noise; that then the switch engine backed up and ran over Feuerstein, who was standing with one foot inside and the other foot outside of the rail; that Feuerstein was using a pick, and was on the north side, while he was on the south side; that he got off the track when he heard the switch engine bell, and that he was watching the engine; that when he got off the track he called to Feuerstein once before he was struck by the engine. When called later by the defendant the witness further testified that he heard the bell ringing and got off from the track; that he called to Feuerstein, and said, "Look out"; that at that time the section foreman was absent, having been gone about 15 or 20 minutes; that when he went away he warned them both to look out for the switch engine; that the engine, while switching, had passed them about 20 times during that day; that they were always warned by the foreman to look out for switch

engines and trains; that there was nothing to prevent them from seeing the approaching switch engine; that there was steam escaping from the safety valve on the top of the freight engine, but not from the cylinder cocks.

On the question of the construction of the switch engine, the record discloses that it was an ordinary road engine of small size with the common square tank, which had been replaced by a larger and heavier engine to supply the needs of the increasing traffic; that it was then equipped with what are called "foot-boards," and was thus fitted for switching and yard work; that it was suitable for that purpose and was similar to those used for switching by the defendant and other railroads; that, while switch engines are sometimes constructed with sloping tanks, both kinds are in general use for switching purposes, and the only difference between them is that the engineer and fireman can see the track a little nearer the back of an engine with a sloping tank than they can with one having a square tank.

Again, the evidence in this case fails to show that the construction of the engine was the proximate cause of the accident in this case. Indeed, there is no proof in the record which shows that it in any way contributed thereto.

It further appears, by plaintiff's own evidence, that the deceased had been working on the section and in the yards of the defendant company for about two months, was familiar with his work and knew its dangers; that the engine in question was in use during that time, and the deceased was familiar with its construction; that his eyesight was good and his hearing perfect. It also appears that he was fully aware of the dangers incident to his employment, and, in the absence of any proof to the contrary, he must be presumed to have assumed the ordinary hazards thereof.

It is alleged in plaintiff's petition that it was the custom of the defendant to station a man on the footboard of its switch engines while working in its Havelock yards to warn persons of their approach, but it appears from

the evidence that some of defendant's tracks were con-
structed through its shops at that place; that when pass-
ing through them a guard is stationed on the footboard
to warn the shopmen to keep off from the tracks, but no
such lookout is or ever has been stationed on the foot-
boards of engines while switching in defendant's yards,
and it is the duty of the sectionmen or trackmen to them-
selves look out for approaching engines and trains, this
being one of the ordinary hazards arising from the nature
of their employment, and thus provide for their own
safety, and the deceased was fully aware of that fact.

Defendant contends that the eighth paragraph of the
court's instructions is erroneous. Therein the jury were
told, among other things, that "the burden is also upon
the defendant to show that the plaintiff assumed the risk
of the accident which resulted in his death." This is one
of the principal errors complained of. In support of this
contention defendant has called our attention to the case of
*Malm v. Thelin*, 47 Neb. 686, where it is said: "A servant
assumes risks arising from defective appliances used or
to be used by him, or from the manner in which the busi-
ness in which he is to take part is conducted, when such
risks are known to him, or apparent and obvious to per-
sons of his experience and understanding, if he volun-
tarily enters into the employment, or continues in it with-
out complaint or objection as to the hazards. * * *
The presumption is that such risk has been assumed by
the servant, and, in order to recover, the burden is upon
the plaintiff to establish one of the exceptions to the rule."
This case was followed and approved in *Evans Laundry
Co. v. Crawford*, 67 Neb. 153. See, also, *Chicago, B. &
Q. R. Co. v. Curtis*, 51 Neb. 442, and *Missouri P. R. Co.
v. Baxter*, 42 Neb. 793.

It is the universal rule that in operating railroads em-
ployees in that business assume the risks which are pe-
culiar thereto, and sectionmen or trackmen must neces-
sarily assume the hazards incident to switching cars and
the movement of passing engines and trains. *Little Rock*

& M. R. Co. v. Barry, 84 Fed. 944. We have not over-
looked the case of Grimm v. Omaha Electric L. & P. Co.,
79 Neb. 387, where in general terms a contrary rule is
stated. But in that case the servant was sent to perform
an extra hazardous duty, without any warning as to the
then unusually dangerous condition of defendant's wires,
and of which he had no knowledge. Therefore, that de-
cision is clearly right, because that case was within the
exception to the general rule so often announced by our
former decisions. We are therefore of opinion that the
district court, in view of the testimony in this case, which
fails to bring it within any of the exceptions to the gen-
eral rule, erred in giving the instruction complained of.

Complaint is also made of the tenth paragraph of the
instructions in which the jury were told that it is the
duty of the master to exercise reasonable care to provide
a safe place for the servant to work. It is contended that
by this instruction the jury must have been led to believe
that there was some evidence in the case that the place
where Feuerstein was required to work—was unusually
dangerous and unsafe, and that by reason thereof he lost
his life. Defendant insists that this instruction should
not have been given because the question of safe place was
not involved in this action. It is a matter of common
knowledge that a railroad track is a place of danger, and
sectionmen or trackmen must be aware of that fact; that
it is impracticable and impossible for a railroad company
to keep a constant watch or lookout for the protection of
sectionmen while engaged in construction or repair work
upon its tracks; that therefore they are required to exer-
cise their faculties of sight and hearing and thus avoid
injuries from passing engines and trains. In this case, it
appears, as above stated, that the deceased was familiar
with the work; that he was acquainted with the yards,
tracks and switches of the defendant company; that he
knew of the construction of its switch engine, and there-
fore must have been fully aware of the dangers incident
to his employment. With this knowledge he sought and

8

obtained work from the defendant company, and remained
in its service without complaint until he was killed. In
view of these facts, we are of opinion that the court should
not have included the question of safe place in its in-
structions to the jury.

It is also contended, among other things, that the evi-
dence is insufficient to sustain the verdict. Upon this
question we express no opinion, for it is possible that the
case may be tried again, and that the evidence upon such
trial may not be the same as that contained in the record
now before us.

For the foregoing reasons, we are of opinion that the
errors above mentioned entitle the defendant to a new
trial, and the judgment of the district court is therefore
reversed and the cause is remanded for further proceed-
ings.

REVERSED.

FAWCETT, J., not sitting.

LETTON, J., concurring in conclusion.

I concur in the reversal of this case, but not for the rea-
sons stated in the foregoing opinion. I think the proper
rule as to pleading in case of assumption of risk is laid
down in the syllabus in *Evans Laundry Co. v. Crawford*,
67 Neb. 153, as follows: "It is not required that the mas-
ter who is sued by a servant for an injury received while
engaged in the line of his employment shall plead in his
answer that the servant assumed the usual and ordinary
risks and hazards incident to the service, in order to be
entitled to an instruction to the jury as to the rule of law
regarding such assumed risks. Where the assumption of
a risk not usually and ordinarily incident to the employ-
ment is relied on as a defense in an action against the
master for negligence, such assumption of risk must be
specially pleaded."

I am also of opinion that, while the instructions are
more extended than necessary under the simple issues
presented in this case, yet there is nothing seriously preju-

dicial to defendant therein when the whole charge is considered. The judgment should be reversed for the reasons that the evidence fails to sustain the verdict, and that if the jury had obeyed the instructions of the court it must have found for the defendant. The court instructed the jury that "if the defendant company was operating its switch engine at that time, with the ordinary and usual tender such as Philip Feuerstein had been accustomed to see it operate when engaged in his work, or if the defendant company was maintaining the kind of a lookout such as said Feuerstein had been accustomed to see it maintain, then said Feuerstein assumed the risks incident thereto." The evidence shows without dispute that the deceased had worked in the Havelock yards for two or three months before he was killed; that this particular engine was the only switch engine used in these yards; that it had been running there for two months or more before the day of the accident, and that on that day it had been running backward and forward on these tracks about 15 or 20 times. It is also clearly proved that it was not the custom to keep men upon the running boards of the engine, except when entering the shops in which tracks were laid and many men employed. The defendant "was operating its switch engine, at that time, with the ordinary and usual tender such as Philip Feuerstein had been accustomed to see it operate when engaged in his work," and was also "maintaining the kind of a lookout such as said Feuerstein had been accustomed to see it maintain." There being no evidence to the contrary upon these propositions, and the deceased having assumed the ordinary risks of his employment, the verdict is not supported by the evidence and is contrary to the instructions of the court.

For these reasons, the judgment of the district court should be reversed.

REESE, C. J., dissenting.

I think the foregoing opinion may be fairly construed

to mean that, by reason of the fact that defendant made common use of the square tank engine for switching purposes, it thereby escapes liability for injuries to its employees by reason of the more dangerous character of the engine. If I am correct in this conclusion I cannot agree to the doctrine announced. It is the duty of an employer to provide for his servants such appliances and to make use of such machinery as will tend to reduce the 'dangers of the employment as much as can be reasonably done. If a square tank is more dangerous in a switch or track yard than the engine with a sloping tank, it is the duty to use that which creates the least danger, if accessible. It is unimportant as to how much, or how generally, the more dangerous appliance is used. It ought not to be used at all. Human life is too sacred to be weighed in the balance with the matter of the employer's convenience or economy. The common knowledge of mankind is that the square tank engine is a more dangerous implement, running back and forth in the switching yards, than the sloping tank. As to whether the quality of the tank used in this case served to increase the danger or contributed to the death of the deceased is a question for the jury, under proper instructions; to whom these questions should be submitted.

It may be true that the construction of a footboard upon the rear of an engine tank was not *intended* in the first instance as a place of lookout from which to warn people who are in danger of being killed or injured by the engines, yet our common knowledge, experience and observation tell us that that footboard affords a most excellent point of observation from which to warn people of their danger, and, in switching yards especially, where employees are continually moving about, the safety of persons could be greatly enhanced by placing an employee upon such advantageous point. This is especially true when a square tank which cuts off the view of the engineer and fireman is used. Questions of this kind should be left to the jury.

SEDGWICK, J., dissenting.

1. It appears from the majority opinion that the judgment of the district court is reversed because of the giving of two instructions which are deemed erroneous. In one of the instructions given the court used the following language: "The burden is also upon the defendant to show that the plaintiff assumed the risk of the accident which resulted in his death." This is held to be erroneous upon the authority of *Malm v. Thelin,* 47 Neb. 686, from which case the following language is quoted in the majority opinion: "The presumption is that such risk has been assumed by the servant, and, in order to recover, the burden is upon the plaintiff to establish one of the exceptions to the rule." I do not think that this language is applicable to the case at bar. In *Malm v. Thelin,* there was evidence tending to show that defective machinery was used under a promise by the master to remove the defect, and it was held that such evidence was inadmissible "where such promise had not been pleaded." The holding is that, when some special fact is relied upon as avoiding the general rule of assumption of risk, such special fact must be pleaded and proved by the plaintiff. If plaintiff relies upon the fact that the machinery was dangerous by reason of defects therein, and cannot deny that he knew of the defective condition of the machinery, and voluntarily continued to use it with full knowledge of the danger connected therewith, he may still deny that he assumed the risk if the master induced him to continue such use by promising to remove the defect, but the burden is upon the plaintiff to prove such promise upon the part of the master, and no such proof is competent unless that issue is tendered by plaintiff in his pleadings. This is the technical rule advanced in *Malm v. Thelin.* No such condition as this arises in the case at bar. The answer alleged that "the risk and danger in moving of engines and trains on the tracks on which he was to work was a risk and danger assumed by him in such work," and the reply

was a general denial. There was no plea in the reply to avoid the assumption of risk on the part of the plaintiff. He simply denied that the risks were of such a nature and the circumstances were of such a character as to require him to assume the risk, and upon this issue, that is, the issue as to whether the plaintiff did in fact assume the risk, the burden of proof is upon the party alleging it, which in this case was the defendant. *Grimm v. Omaha Electric L. & P. Co.*, 79 Neb. 395, and cases cited.

Under the authority of *Malm v. Thelin* no evidence as to assumption of risk was competent in this case except upon the general issue as to whether or not the plaintiff did assume all the risks to which he was subjected. There was no evidence offered of any special promise on the part of the defendant, or of any special circumstances that would change or affect the general rule that the assumption of risk is an affirmative matter to be presented and proved by the defendant, and the instruction of the court properly stated the issue as it was presented. The whole charge to the jury must be construed together; and the court correctly instructed the jury on the assumption of risk in other instructions. Instruction No. 11 is as follows: "By acceptance of an employment, a servant assumes all risks of injury caused (*a*) by the negligence of a competent fellow servant; (*b*) by the dangers incidental to the business; (*c*) by the dangers arising from the existing conditions of the premises, machinery, etc., which are known or ought to be known to the servant at the time, therefore no duty is imposed upon the master to protect a servant against these risks, and he consequently cannot be guilty of negligence in connection therewith. The risk that a master will himself be negligent is not assumed by the servant, and where the master owes any duty to the servant, he cannot escape liability by delegating its performance to an agent. A servant by accepting the employment impliedly agrees to assume all risks of injury arising from an existing condition of affairs, however dangerous that condition may be, provided that (*a*) he

knows and appreciates the danger; (*b*) or in the exercise of reasonable care would know and appreciate it; (*c*) and if the danger is obvious he is held to know and appreciate it. As to such dangers, the master owes no duty to the servant. However, as to dangers which due care would not disclose to him, the master is bound to warn him."

2. The majority opinion holds that "the question of safe place was not involved in this action," but the instruction does not tell the jury that the master is bound under all circumstances to furnish a safe place to work. He must not "carelessly subject his servant to any danger not necessarily incident to or connected with his employment," and he must exercise reasonable care to provide his servant with a reasonably safe place in which to work, taking into account the nature of the business in which he is engaged. Instruction No. 10 which contains the language held to be erroneous is as follows: "It is the duty of the master to use reasonable care in the conduct of his business, so as not to carelessly subject his servant to any dangers not necessarily incident to or connected with his employment. It is also the master's duty to exercise reasonable care to provide his servant with a reasonably safe place in which to work, taking into account the nature of the business in which he is engaged, and the servant has a right to assume that the place furnished him in which to work is reasonably safe and suitable for the performance of the services required, taking into consideration the nature of the employment, unless there are some obvious dangers. If there are dangers incident to the employment that are not obvious to a man of the empl[...] experience and understanding, then it is th[...] master to give proper directions as to how [...]e wor[...] be done to avoid such dangers." This instruction [...] mediately followed by instruction No. 11, quoted abov[...] which the duties of the servant and the risks assumed [...] him are correctly and plainly explained.

I am unable to see how the issue presented by the plea[...] ings and evidence could be more fairly or accurately

stated.    If these instructions were erroneous it was because of the condition of the evidence that was before the jury, and the holding of the majority opinion is in effect that the evidence was such that the court should have told the jury that the plaintiff assumed all of the risks of the employment in which he was engaged.    It seems to me that the court should either have instructed the jury to find a verdict for the defendant or else should have given the instructions substantially as they were given.    In other words, I think that the case was carefully and properly tried, and that there is no escape for the defendant unless it is held that the evidence was not sufficient to support the verdict.