## CHICAGO, B. & Q. R. CO. v. SHALSTROM.

(Circuit Court of Appeals, Eighth Circuit.  March 22, 1912.)

No. 3,594.

*(Syllabus by the Court.)*

**1.** MASTER AND SERVANT (§ 203\*)—INJURY TO SERVANT—ASSUMPTION OF RISK.

A servant, by entering and continuing in the employment of a master without complaint, assumes the ordinary risks and dangers of the employment and the extraordinary risks and dangers which he knows and appreciates.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543;  Dec. Dig. § 203.\*]

**2.** MASTER AND SERVANT (§ 217\*)—ASSUMPTION OF RISK OF MASTER'S NEGLIGENCE.

Although the risk of the master's negligence and of its effect unknown to the servant is not one of the ordinary risks of the employment which he assumes, yet, if the negligence of the master or its effect is known and appreciated by the servant, or is "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience" (United States Smelting Company v. Parry, 166 Fed. 407, 410, 92 C. C. A. 159, 162), and he enters or continues in the employment without objection, he elects to assume the risk of it, and he cannot recover for the damages it causes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600;  Dec. Dig. § 217.\*]

**3.** MASTER AND SERVANT (§ 219\*)—APPRECIATION OF DANGER—WHEN SERVANT ESTOPPED FROM DENYING.

When a defect is obvious or "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience," and the danger and risk from it are apparent, he cannot be heard to say that he did not realize or appreciate them.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624;  Dec. Dig. § 219.\*]

**4.** MASTER AND SERVANT (§ 155\*)—NO DUTY TO WARN OF APPARENT DANGERS.

No duty rests on the master to warn a servant of defects, risks, or dangers which are "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 310;  Dec. Dig. § 155.\*]

**5.** MASTER AND SERVANT (§ 222\*)—ASSUMPTION OF RISK—MASTER'S ORDER NO RELEASE WHERE DEFECTS AND DANGERS OBVIOUS.

The direct order of the master or of the foreman to the servant to work at a specified place, or with certain appliances, does not release him from his assumption of the apparent risks and dangers of defects in the place, structure, or appliances that are "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience."

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 648–651;  Dec. Dig. § 222.\*]

**6.** MASTER AND SERVANT (§ 203\*)—ASSUMPTION OF RISK INHERES IN EMPLOYMENT—NO FURTHER PLEADING OR PROOF REQUISITE.

The agreement of a servant to assume the ordinary risks of his employment and the extraordinary risks thereof that are apparent inheres in and is an inextricable part of his contract of employment, and when the latter is proved or admitted the assumption of these risks is proved, and

no pleading or proof on the part of the defendant is necessary to establish it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 538–543; Dec. Dig. § 203.*]

7. MASTER AND SERVANT (§ 288*)—ASSUMPTION OF RISK—DIRECTED VERDICT WHEN DEMANDED.

When the uncontradicted evidence discloses the fact that the defects in the place, structure, or appliances were "so patent as to be readily observed by the plaintiff by the reasonable use of his senses, having in view his age, intelligence, and experience," and the risks and dangers from them were apparent, and the servant entered upon and continued in the service without complaint, his assumption of the risk is conclusively established, and the court should instruct the jury to return a verdict for the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1005, 1068–1088; Dec. Dig. § 288.*]

8. MASTER AND SERVANT (§ 219*)—ASSUMPTION OF RISKS—FACTS—CONCLUSION.

An experienced carpenter, in the employment of the defendant, who was receiving top wages, was directed to assist in placing joists upon the walls of a building 25 feet high, the support of which in the middle consisted of a stringer composed of pine lumber 2x6, sustained by posts made of two pieces of lumber 2x8, spliced together and braced, to which the stringer was nailed. Joists had been placed on the walls and stringer over one-third of the building. The servant knew the size and kind of material of which the posts and stringers were composed, how they were made and fastened together, and he had done work of this kind before. There was no latent defect in the structure, and its method of construction and component parts were plain and obvious. He went out on the stringer with another workman beyond the joists, drew up 8 or 10 pieces of lumber to make 4 or 5 joists, and he and his fellow workman were nailing these together on the stringer, when an upright below gave way and he fell.

*Held*, the defects of the structure were obvious, the dangers of its use apparent, and the servant assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 610–624; Dec. Dig. § 219.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the District of Nebraska.

Action by Victor F. Shalstrom against the Chicago, Burlington & Quincy Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Byron Clark and James E. Kelby, for plaintiff in error.

Lionel C. Burr, Robert J. Greene, and Philip F. Greene, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and WILLIAM H. MUNGER, District Judge.

SANBORN, Circuit Judge. This is an action for negligence of the Railroad Company which Mr. Shalstrom, the plaintiff below, alleged caused his personal injury, and the defenses were that he assumed the risk and was guilty of contributory negligence. There was a verdict and judgment against the company. Many alleged errors are assigned; but the most important is that the court refused, at the close

of the trial, to instruct the jury to return a verdict against the plaintiff. The verdict has decided all conflicts in the testimony against the company, and on that basis the evidence at the close of the trial disclosed these facts: On December 10, 1910, the company was building an icehouse in the city of Lincoln, in the state of Nebraska, which was 200 feet long from east to west and 38 feet wide from north to south on the ground floor, and 36 feet wide at the top of the walls which had been erected and were 25 feet high. The company had covered the east third of the building with joists, each of which consisted of two pieces of lumber 2x6, one about 20 and the other about 24 feet long, which were nailed together where they overlapped and placed on edge so that one end of each joist rested on the plate on the north wall, the other end on the plate on the south wall, and the middle on a stringer which stretched from east to west at the height of the walls through the middle of the building and was supported by uprights or posts 8 or 10 feet apart. These posts were made of two pieces of lumber 2x8, spliced and nailed together where they overlapped so as to make their upper ends 25 feet high. The stringer was made of pieces of lumber 2x6, the ends of which were nailed on to the sides of the upper ends of the posts so that the joists would rest upon the upper edge of the stringer. Each post was held in place by a single brace, one end of which was nailed to the post about two feet from its upper end and the other to the studding in one of the side walls about 12 feet above the floor. The joists were placed 2 feet apart. Each one, after it was set on edge in place, was nailed to the plates at its ends and to the stringer in the middle, and a board or piece of sheathing was placed upon it above the stringer and nailed to it and to the other joists by its side. Loose boards or sheathing had been placed upon the joists which had been put in place, and this was called the "deck." It covered the east one-third of the building, and it was capable of sustaining a weight of more than 2,000 pounds. The work in process was the extension of this deck over the westerly two-thirds of the building, and the method of doing the work had been to pull a pair of 2x6s up from the floor below to the side of the deck, lay them flat on the plates and the stringer, make their ends flush with the wall, nail them together where they overlapped, set the joist thus made on edge in its place, nail it to the plates and the stringer, draw the board above the stringer forward, and nail that to the upper edge of the joist and to the other joists. In this way over one-third of the building had been covered with the joists without accident by the use of the stringer and the posts which were not a part of the permanent structure of the building and were not erected to provide a scaffold or place for the workmen to labor upon. They were built to hold the joists up temporarily until the rafters were erected, when these joists were to be permanently supported by hangers from the roof and the stringer and posts were to be removed. The posts, the stringer, the joists, the material of which and the means by which they had been made and secured in place, were in plain sight of any one who went into the building, for there were no partitions or coverings that concealed any of them. Mr. Shalstrom was a skilled and experienced carpenter who was em-

ployed by the company and was receiving the highest wages paid to carpenters. On the morning of October 10, 1910, he walked into this icehouse by direction of his superior, to assist in its construction, and reported to the foreman, Mr. Franklin, who told him to go up the ladder and go overhead on the joists and pull the joists up, to go to the center of the building over the stringer that supported the joists. He first went to a fire that was started in the building and warmed himself for about 20 minutes, and then he went up onto the deck over the stringer and with another man proceeded to pull up the pieces of lumber from the floor below, to make joists, and to nail them in place. Instead of making one joist at a time and securing it in place, they drew up the lumber for four or five joists, both went out upon the stringer west of the deck upon the material for these new joists and were nailing this lumber together to make the joists when one of the posts below bent, pulled out the nails that fastened it to the stringer, the latter gave way, and Shalstrom fell to the floor below and was injured. The question is: Did he assume the risk of this fall and injury?

Conceding, without considering or deciding the question, that there was evidence that the Railway Company failed to discharge its duty to exercise ordinary care to furnish a reasonably safe place for the plaintiff to make and place the joists, this case must be determined by the following established rules of law:

[1] A servant by entering and continuing in the employment of a master without complaint assumes the ordinary risks and dangers of the employment and the extraordinary risks and dangers thereof which he knows and appreciates. Choctaw, Oklahoma & Gulf R. R. Co. v. McDade, 191 U. S. 64, 67, 24 Sup. Ct. 24, 48 L. Ed. 96; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 508, 61 C. C. A. 477, 490, 63 L. R. A. 551; Glenmont Lumber Co. v. Roy, 126 Fed. 524, 528, 61 C. C. A. 506, 510; Burke v. Union Coal & Coke Co., 157 Fed. 178, 180, 84 C. C. A. 626, 628.

[2] Although the risk of the master's negligence and of its effect unknown to the servant is not one of the ordinary risks of the employment which he assumes, yet if the negligence of the master or its effect is known and appreciated by the servant, or is obvious, or "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence, and experience" (United States Smelting Company v. Parry, 166 Fed. 407, 410, 92 C. C. A. 159, 162), and he enters and continues in the employment without objection, he elects to assume the risk of it, and he cannot recover for the damages it causes (Texas & Pacific Ry. Co. v. Archibald, 170 U. S. 665, 672, 18 Sup. Ct. 777, 42 L. Ed. 1188; Choctaw, Oklahoma & G. R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Burke v. Union Coal & Coke Co., 157 Fed. 178, 181, 84 C. C. A. 626, 629; Lake v. Shenango Furnace Co., 160 Fed. 887, 892, 88 C. C. A. 69, 74).

[3] When a defect is obvious or "so patent as to be readily observed by a servant by the reasonable use of his senses, having in view his age, intelligence and experience," and the danger and risk from it are apparent, he cannot be heard to say that he did not realize

or appreciate them. Utah Consol. Min. Co. v. Bateman, 176 Fed. 57, 63, 99 C. C. A. 365, 371, 27 L. R. A. (N. S.) 958; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 501, 509, 511, 61 C. C. A. 477, 483, 491, 493, 63 L. R. A. 551; Glenmont Lumber Co. v. Roy, 126 Fed. 524, 528, 61 C. C. A. 506, 510; Lake v. Shenango Furnace Co., 160 Fed. 889, 892, 88 C. C. A. 69, 72.

[4] No duty rests on the master to warn a servant of defects, risks, or dangers that are "so patent as to be readily observed by him by the reasonable use of his senses, having in view his age, intelligence and experience." Bohn Mfg. Co. v. Erickson, 55 Fed. 943, 946, 5 C. C. A. 341, 344; Glenmont Lumber Co. v. Roy, 126 Fed. 524, 528, 529, 61 C. C. A. 506, 510, 511; King v. Morgan, 109 Fed. 446, 449, 48 C. C. A. 507, 510; Railroad Co. v. Miller, 104 Fed. 124, 43 C. C. A. 436; Mississippi Riv. Log. Co. v. Schneider, 74 Fed. 195, 197, 20 C. C. A. 390, 392; Lake v. Shenango Furnace Co., 160 Fed. 889, 892, 88 C. C. A. 69, 72.

[5] Assumption of risk rests upon the maxim, "Volenti non fit injuria," and upon the contract of employment. It rests upon the principle that no legal injury can be inflicted upon one who willingly assumes the known or obvious risk of it, and hence it includes the risk of known or obvious defects and dangers which the master or the foreman directs the servant to incur during the employment, for the latter is as free to decline to obey such an order as he is to decline to take or to continue in the employment, and where he knows and appreciates the defect and danger as well as the master or the foreman, he becomes subject to the maxim, upon the willing no legal injury can be inflicted. The order or direction of the master, or of the foreman, to the servant to work at a specified place, or with certain appliances, does not release the servant from his assumption of the apparent risks and dangers of defects in the place, structure, or appliances that are known to him, or are "so patent as to be readily observed by the reasonable use of his senses, having in view his age, intelligence, and experience." Railroad Co. v. Jones, 95 U. S. 439, 443, 24 L. Ed. 506; Kean v. Detroit Copper & Brass Mills, 66 Mich. 277, 33 N. W. 395, 400, 11 Am. St. Rep. 492; Stuart v. New Albany Mfg. Co., 15 Ind. App. 184, 43 N. E. 961, 964, 965; Paule v. Florence Mining Co., 80 Wis. 350, 50 N. W. 189, 191; Showalter v. Fairbanks, Morse & Co., 88 Wis. 376, 60 N. W. 257, 258; Toomey v. Eureka Iron & Steel Works, 89 Mich. 249, 50 N. W. 850; Linch v. Manufacturing Co., 143 Mass. 206, 210, 9 N. E. 728; Bradshaw's Adm'r v. Railway Company (Ky.) 21 S. W. 346; O'Connell v. Clark, 22 App. Div. 466, 468, 48 N. Y. Supp. 74; Davis v. Detroit & Milwaukee R. R. Co., 20 Mich. 105, 127, 4 Am. Rep. 364; Wilson v. Tremont & Suffolk Mills, 159 Mass. 154, 155, 34 N. E. 90; Burlington & C. R. Co. v. Liehe, 17 Colo. 280, 285, 29 Pac. 175, 176.

[6] The agreement of the servant to assume the ordinary risks of his employment and the extraordinary risks thereof that are known to and appreciated by him inheres in and is an inextricable part of his contract of employment, and when that is proved or admitted the assumption of these risks is proved, and no further pleading or proof on the part of the defendant is necessary to establish it. Malm

. v. Thelin, 47 Neb. 686, 66 N. W. 650; Glantz ,v. Chicago, B. & Q. R. Co., 87 Neb. 60, 127 N. W. 221; Evans Laundry Co. v. Crawford, 67 Neb. 153, 93 N. W. 177, 94 N. W. 814; St. Louis Cordage Co. v. Miller, 126 Fed. 495, 501, 61 C. C. A. 477, 483, 63 L. R. A. 551.

[7] When the uncontradicted evidence discloses the fact that the defects in the place, structure, or appliances were "so patent as to be readily observed by the plaintiff by the reasonable use of his senses, having in view his age, intelligence, and experience," and the risks and dangers from them were apparent, and he entered upon or continued in the service without complaint, his assumption of the risk is conclusively established, and the court should instruct the jury to return a verdict for the defendant. Glenmont Lumber Co. v. Roy, 126 Fed. 524, 528, 61 C. C. A. 506, 508; Federal Lead Co. v. Swyers, 161 Fed. 687, 690, 88 C. C. A. 547, 550; Stewart v. Brune, 179 Fed. 350, 355, 102 C. C. A. 534, 539.

[8] The record in this case has been searched in vain for any evidence that may withdraw it from the operation of these rules. The structure on which Mr. Shalstrom worked was plain and simple, and all its parts were obvious to every one who entered the building. To such a skilled and experienced carpenter as he was, the strength, safety, and fitness of its plan and its parts for the work upon it which he performed and the risk and danger of overloading it were equally apparent. The only defect in it submitted to the jury was the absence of more and different braces of the posts, and no defect could be more obvious than this to one who walked through the building, climbed to the deck, and worked on the stringer above the posts pulling up joists from below. The plaintiff below was not ignorant of the nature of this structure. While he had never seen it before the morning on which he commenced to work upon it, and while he testified in one place that he did not see the brace which was nailed to each post and at another place that he thought there were such braces but was not sure, when his entire testimony is read it brings conviction that he had a complete knowledge of the structure. So intimate and definite was this' knowledge which he gained before he fell that he subsequently. made and introduced in evidence a model, which he testified was a true representation of the structure, and then he further testified that he had done work of the kind he was doing on the day of the accident before, that he noticed the size, of the posts and stringers and the kind of wood of which they were made before he went up on to the deck and the stringer, that the pieces of lumber which constituted the stringer met end to end on the same side of the posts and were nailed to the latter by two spikes in each end, and that the pieces of lumber constituting the joists were fastened together with four or five nails in each splicing. The structure did not fall from any latent defect, and no one could know, more than did Shalstrom, of the material facts which conditioned its fitness and safety for the work which he performed. He testified that it was a temporary structure merely to hold up the joists until the hangers were attached. He knew that there was a limit to the weight it would sustain and that if that limit was exceeded it

would fall. Knowing the materials of which it was composed, the size of the posts and of the stringer, the way in which they were made, and that the posts either had no braces or but one each, and having had previous experience in this kind of work, the alleged defect in the structure was unavoidably obvious to him, and the risk and danger of placing two men driving nails and the materials for four or five joists on this stringer in front of the deck was necessarily apparent, and there is no escape from the conclusion that he assumed the risk.

The judgment below must, accordingly, be reversed, and the case remanded to the court below for a new trial, and it is so ordered.