OZARK SMELTING & MINING CO. v. SILVA.

SAME v. LOPEZ.

(Circuit Court of Appeals, Eighth Circuit. January 28, 1919.)

Nos. 5123, 5124.

1. MASTER AND SERVANT ⬅278(20)—INJURIES TO SERVANT—WARNING.

In an action for the death of two miners who were swallowed in an ore chute which was clogged when they began to shovel ore therein, evidence *held* to warrant a finding that the warning given was insufficient; such miners being inexperienced.

2. MASTER AND SERVANT ⬅219(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

An employé by entering and continuing in the employment without complaint assumes ordinary risks and, extraordinary risks of which he knows and which he appreciates, as well as patent risks and dangers of defects in the place of work; but he does not assume risks or dangers that are latent and unknown to him.

3. MASTER AND SERVANT ⬅153(3)—INJURIES TO SERVANT—LATENT DEFECTS.

The danger that an ore chute in a mine might be clogged and might well open with a rush so as to swallow miners who were shoveling ore therein is a latent danger as to inexperienced miners, and they should be given warning.

In Error to the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Action by Barney P. Silva, as administrator, etc., against the Ozark Smelting & Mining Company, together with an action by Juanita Luna de Lopez, administratrix, etc., against the same defendant, which were tried together. There were judgments for plaintiff in both cases, and defendant brings error. Affirmed.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Reid, Hervey & Iden, of Roswell, N. M., and William E. Hutton, of Denver, Colo., for plaintiff in error.

O. A. Larrazolo, of Las Vegas, N. M., and J. A. Gillett, of El Paso, Tex., for defendants in error.

Before SANBORN, Circuit Judge, and TRIEBER, District Judge.

SANBORN, Circuit Judge. About 5 o'clock in the afternoon of March 16, 1916, Carlos Luas, Jr., a young man 20 years of age, and Manuel Antonio Lopez, a youth 17 years of age, employés of the Ozark Smelting & Mining Company, a corporation, were directed by its night foreman to go to chute 802a and shovel ore into it. Chute 802a was from 30 to 50 feet in length. It extended in a line substantially straight at an angle of about 45 degrees from the eighth level of the Ozark Company's mine, where that company was mining ore, to a level below where the ore was loaded into cars to be carried away. There was a door or gate at the lower end of the chute which could be so opened and closed as to permit a carload of ore at a time to run from it into a car. The chute was used to lead the ore from the eighth level to the place of loading it upon the cars. If the chute was full of ore or nearly so, and an employé was at work upon this ore or near the upper end of the chute and the door or gate was opened to load a car, the ore in the upper end of the chute would settle down slowly into the chute, but not in such a way as to endanger the workmen. There were 30 or 40 chutes of this character in this mine; some of them were straight, and some were crooked. Sometimes the ore in one or more of these chutes would form a jam part way down the chute, leaving the lower part of the chute empty, and the company had an employé whose duty it was to break such jams and let the ore down to the gate or door.

At the time the order to shovel ore into chute 802a was given to the young men, the upper end of the chute was full of ore, and it was piled up from 1½ to 2½ feet above its upper portal. The testimony was conflicting whether the natural inference from the fact that the upper end of the chute was full of ore was that it was full from the door or gate at its lower end, or that the ore was congested at some point above the door or gate, leaving the lower portion of the chute empty. The upper mouth or portal of the chute was in a stope on the eighth level where the company was taking out ore, and on one or two sides of this mouth the face of the ore in place was so near to it that when the blasting was done some of the ore would roll down into or upon the portal of the chute. Sometimes when the ore became congested in a chute it would suddenly give way and the ore would run down the chute so fast as to swallow up and kill a man working upon the ore in or on the upper end of the chute, or near enough to be drawn into it, as the ore ran down from the sides of the stope above it. This was what happened to Luas and Lopez within an hour or two after they went to shovel coal into the chute. No living witness of the accident remained, but the dead bodies of these young men

were taken out of the lower end of the chute during the night. The administrator of the estate of Luas and the administratrix of the estate of Lopez sued the Ozark Company for its alleged failure to exercise reasonable care to furnish a safe place for the deceased to work. The two suits were tried together. At the close of the trial the court denied the motion of the Ozark Company, in each case, to instruct the jury to return a verdict in its favor. It excepted to that ruling. The court held that there was no substantial evidence of any actionable negligence of the defendant, unless in that it failed sufficiently to warn the young men of the danger of working on or too near the ore in or over the upper end of the chute on account of the possibility of a congestion of the ore in the chute and the danger of its carrying them down into it. Thereupon the court charged the jury, and at the request of the Ozark Company submitted to them two questions: First, whether or not the deceased were warned that it was dangerous at all times to work or be upon the ore body immediately above the mouth of the ore chute when the ore in the chute was in a congested condition; and, second, whether or not the danger of working or being upon the ore body immediately above the ore chute and the mouth thereof, when the chute was in a congested condition, would have been observed and apparent, to men of the age, intelligence, and experience of the deceased exercising ordinary care. The jury answered both questions in the negative, and returned a verdict against the company.

[1] In this state of this case, but a single question is presented to this court, and that is: Was the evidence of a sufficient warning to the deceased of the danger of working or being on or too near the ore over the mouth of the chute on account of the possible congested condition thereof therein, so conclusive that the court erred in its refusal to withdraw that question from the jury and to instruct them to return a verdict for the defendant? All the evidence regarding that subject is in the testimony of a single witness, the night foreman of the Ozark Company, who hired the deceased, gave them the warning they received, and sent them to shovel ore into the chute. At the time they were so sent Luas had been at work in the mine about twelve days. He had worked at the place where he was injured four or five times. Lopez had worked in the mine three or four days, but had never shoveled ore into or onto chute 802a. At the time the foreman sent these men to their work at the head of this chute, he had not seen it during that day, and he gave them no warning at that time of the danger from its congestion. There is no evidence that either he or the deceased knew or suspected that it was congested, nor is there any evidence tending to show that the deceased knew or were ever told how they could find out whether a chute the upper mouth of which was covered with ore was full from the gate or door to the top, or was empty in some parts of it and the ore was congested above that part.

After the foreman had testified that, at the time he sent the deceased to their work on the day of their death, he simply told them to go to the chute and shovel ore into it, he answered in the affirmative this question of one of the counsel for the company:

"Did you at that time, or at any previous time, call their attention to the fact that it was dangerous to step up on an ore pile that was over a chute that was congested?"

In answer to like questions he testified that at the time he employed Luas he told him to be careful of the chutes because chutes would swallow men, that he explained to him that chutes sometimes or quite frequently congested or choked up, and that that was the time they were dangerous, and that he gave Lopez the same warning when he was employed, but, when asked by counsel for the plaintiffs below to tell what warning he gave Lopez when the latter went to work for him, his answer was:

"I told him to be careful in different places, different rocks that might come down, and to be always careful in the chutes, that chutes swallowed men because other times men have been swallowed in that mine the same as the two; that is all."

If that was all, it was clearly an insufficient warning, and he had already testified that he gave the same warning to Lopez that he did to Luas, and, if that was true, the warning to Luas was insufficient. Whether his testimony in answer to the questions of counsel for the company or his testimony in answer to the request of counsel for the plaintiffs, to tell just what he told Lopez, was true, was clearly a question for the jury. Here is an extract from the testimony of this witness:

"Q. Mr. Reed asked you that if you saw ore piled up over the mouth of the chute that you would naturally suppose that the chute was congested and that the ore was not running down well. A. Yes, I said so; and I can say so under your question.

"Q. I suppose you mean by that that if you saw the ore piled up over the opening of the chute, you mean by that that you would naturally suppose that the door of the lower mouth of the chute was closed and that the whole chute was filled up with ore; that is right, isn't it? A. The door was closed, yes.

"Q. And the supposition would be that the whole chute was packed full of ore? A. Yes."

[2] An employé by entering and continuing in the employment of his employer without complaint assumes the ordinary risks and dangers of the employment, the extraordinary risks and dangers thereof which he knows and appreciates, and the risks and dangers of defects in the place, structure or work, which are so patent as to be readily observable by the use of his senses, having in view his age, intelligence, and experience. Chgo., B. & Q. Ry. v. Shalstrom, 195 Fed. 725, 728, 729, 115 C. C. A. 515. But he does not assume risks and dangers that are latent, that, though known to the employer, are unknown and unappreciated by him and are not readily observable by one of his age, intelligence, and experience, and of such dangers and risks it is the duty of the master so to notify him that one of his age, experience, and intelligence would know and appreciate them and would know how to avoid the dangers. Bohn Mfg. Co. v. Erickson, 55 Fed. 943, 946, 5 C. C. A. 341.

[3] The risk and the danger in this case were latent, not readily observable, not likely to be known or appreciated by young men of the

age, intelligence, and experience of the deceased. There is no evidence that either of them had ever experienced or observed the effect of the unexpected break of a congestion in an ore chute. The fact that the upper mouth of the chute was covered and the ore piled upon it was no clear indication that the ore was congested in the chute and the chute empty beneath the congestion. The foreman himself does not seem to have known whether the fact that the upper portal of the chute was covered with piled ore was an evidence of a congested chute or of one that was full all the way from top to the door or gate at the lower mouth thereof, for he testified that it indicated each. Moreover, there is no evidence that the deceased knew or were ever told how to find out and know when a chute was congested so that they could avoid the danger of the congestion.

In view of the situation of the deceased, of the extent of their knowledge, intelligence, and experience, and of their relation to the Ozark Company portrayed by the evidence, and of the uncertainty in which the testimony of the foreman leaves the nature and extent of the warning he gave them, the fact that they were fairly warned of the risk or danger of being or working over the upper portal of the chute, and of the way to avoid this danger, was not so clearly proved that there was error in leaving the question of the sufficiency of that warning to the jury, and the judgment below is affirmed.